Maurice PENTICO and Pauline
Pentico, Appellants,

v.

MAD–WAYLER, INC. and David
C. Madsen, Individually,
Appellees.

No. 13–96–277–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 12, 1998.

Rehearing Overruled April 30, 1998.

Kelly K. McKinnis, McAllen, for Appellants.

William E. Corcoran, Law Office of William E. Corcoran, McAllen, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is a usury case. The trial court granted the motion for summary judgment of appellees, Mad–Wayler, Inc. and David C. Madsen, Individually, and ordered that appellants, Maurice Pentico and Pauline Pentico, forfeit the principal sum of $96,590 and pay a penalty of $35,931.26. By two points of error, appellants contend the trial court erred by denying their motion for summary judgment and by granting appellees' motion for summary judgment. We affirm the trial court's order denying appellants' motion for summary judgment. We reverse the trial court's order granting appellees' motion for summary judgment and remand the case to the trial court for further proceedings.

### Background

On June 10, 1987, appellants loaned Mad–Wayler $100,000. A promissory note and deed of trust to secure the loan were prepared by Royce Brough, a principal in Mad–Wayler, and executed the same day. The note was guaranteed by Brough and David C. Madsen, also a principal in Mad–Wayler, Inc. According to the terms of the note, interest accrued on the unpaid balance at the rate of ten percent per annum, and interest on matured, unpaid amounts accrued at the rate of twelve percent per annum. For the first nine months, monthly payments of $1,000 were to be made on the principal, with the first payment being due on July 10, 1987. Interest for those nine months was to be paid on April 1, 1988. Effective April 10, 1988, principal and interest were to be paid in monthly installments of $2,000. The note was to be fully paid by February 1, 1991.

Between July 1987 and September 1989, only one payment was made on time. Typically, payments were made one week or more late. After March 1989, payments were not made in full; Mad–Wayler sent two or three separate checks totaling $2,000 for each month. On September 20, 1989, ten days after the September payment was due and not received, appellants hand-delivered a letter and an amortization schedule to Madsen and demanded that Mad–Wayler remit payment of the overdue September loan installment plus late charges by September 25. After examining the amortization schedule appellants sent, Madsen realized that the late charges had been grossly miscalculated. On September 22, appellees filed a lawsuit charging appellants with usury. On or about September 29, appellants prepared a new amortization schedule reflecting the correct late charges. Appellants were not served with the lawsuit until November 1, 1989.

The trial court's docket sheet reflects that between November 1989 and April 1994, the parties filed motions and counter-motions, engaged in extensive discovery, and attempted mediation. Appellants moved for summary judgment in April 1994, but it was denied in July 1994.[1] Appellees then filed a motion for summary judgment, and it was granted. This appeal followed.

### Standard of Review

In their brief, appellees point out that appellants have failed to include appellees' request for admissions from appellants in the record. Appellees contend that failure to include appellants' admissions requires us to summarily affirm the trial court's summary judgment. The burden is on the appellant to present a complete record of what the trial court had before it in ruling on a motion for summary judgment. TEX.R.APP. P. 50(d) (amended August 15, 1997) (current version at TEX.R.APP. P. 35.3);[2] *Beck & Masten Pontiac–GMC, Inc. v. Harris County Appraisal Dist.*, 830 S.W.2d 291, 295 (Tex. App.—Houston [14th Dist.] 1992, writ de-

---

1. Appellants filed a motion for *partial* summary judgment in November 1992. The docket sheet reflects that no hearing was held on this motion, and it was never ruled on. In April 1994, appellants filed a "First Amended Motion for Summary Judgment." The language of the order of July 1994 does not include the word "partial" in overruling appellants' motion for summary judgment.

2. Under the new rules of appellate procedure effective September 1, 1997, it is now the responsibility of the trial court clerk to file the record. TEX.R.APP. P. 35.3. We note, however, that the transcript in the instant case was due more than one year before the new rules went into effect.

nied). Missing items are presumptively held to support the trial court's judgment. *De-Santis v. Wackenhut Corp.,* 793 S.W.2d 670, 689 (Tex.1990). Nonetheless, we will not automatically affirm the ruling as it is far from obvious that the trial court relied on the missing evidence or that the omitted portion of the record is essential to ascertaining the basis of the court's decision. *See Gupta v. Ritter Homes, Inc.,* 633 S.W.2d 626, 628 (Tex. App.—Houston [14th Dist.] 1982) (contents of missing portion of record were not asserted in motion for summary judgment and immaterial to trial court's ruling), *aff'd in part, rev'd in part on other grounds,* 646 S.W.2d 168 (Tex.1983); *cf. Alcantar v. Edelstein's Better Furniture,* 818 S.W.2d 547, 548 (Tex. App.—Corpus Christi 1991, no writ) (summarily overruling point of error due to omission of obviously pertinent evidence); *DeBell v. Texas Gen. Realty, Inc.,* 609 S.W.2d 892, 893 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) (documents omitted from record were relied on by trial court and cited in summary judgment order). The appellees' motion for summary judgment must stand or fall on its own merits. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993); *Freedom Communications, Inc. v. Brand,* 907 S.W.2d 614, 618 (Tex.App.—Corpus Christi 1995, no writ).

█ When both parties move for summary judgment and one motion is granted and the other is overruled, the appellate court should consider all questions presented to the trial court, including whether the losing party's motion should have been overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Each party must carry its own burden as the movant and, in response to the other party's motion, as the non-movant. *James v. Hitchcock Indep. Sch. Dist.,* 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). To prevail, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993). When both parties move for summary judgment, this court has the authority to (1) affirm the judgment, (2) reverse the judgment and render the judgment that the trial court should have rendered, or (3) reverse the judgment and remand the case to the trial court for further proceedings. *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984).

Appellants moved for summary judgment in April 1994. On July 13, 1994, the trial court heard and denied appellants' motion. On July 21, 1994, appellees filed their motion for summary judgment, and it was granted in April 1996. Even though the motions for summary judgment in this case were filed and ruled upon at different times, we will review both motions because appellants complain the trial court erred in granting appellees' motion for summary judgment and in denying their motion for summary judgment.

A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon,* 690 S.W.2d at 549; *Rios v. Texas Commerce Bancshares, Inc.,* 930 S.W.2d 809, 814 (Tex.App.—Corpus Christi 1996, writ denied). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon,* 690 S.W.2d at 549; *Rios,* 930 S.W.2d at 814. If the movant establishes that he is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should be avoided. *Casso,* 776 S.W.2d at 556.

██ Where the summary judgment order specifies the grounds on which it bases summary judgment, we limit our review to those grounds. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Delaney v. University of Houston,* 835 S.W.2d 56, 58 (Tex.1992); *Cox v. Upjohn Co.,* 913 S.W.2d 225, 228 (Tex.App.—Dallas 1995, no writ). The summary judgment will be affirmed on appeal if the specified grounds are meritorious. *S.S.,* 858 S.W.2d at 380; *River Consulting, Inc. v. Sullivan,* 848 S.W.2d 165, 168–69 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Even if the motion contained

other independent grounds on which summary judgment was sought, the grounds specified in the order are the only ones on which summary judgment may be affirmed. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied).

*Appellants' Motion for Summary Judgment*

By their second point of error, appellants contend the trial court erred in denying their motion for summary judgment.

After reviewing appellants' motion for summary judgment, we find that it is stylistically an answer to appellees' petition and cites no legal authority in its arguments. In the motion, appellants argue that they are entitled to summary judgment because, contrary to appellees' assertions, they have not charged more than twice the amount of interest allowed by law. They argue that total interest on the note up to the date of maturity ($34,466.83) plus properly re-calculated late charges of $88.83 is well within the $35,000 maximum interest that could have been charged. Appellants do not explain how they arrive at any of these figures. Elsewhere in the motion, appellants argue that the applicable interest cap is $42,067.30, but they do not clarify why this number should be used instead of, or in addition to, the $35,000. They acknowledge that the late charges of $11,977.26 were miscalculated, but downplay the significance of the charges and do not utilize them in calculations. Other than labeling the $11,977.26 in late charges "erroneous," appellants ignore this central issue.

Appellees' lawsuit relies largely on the alleged impropriety of the outrageous late charges to establish usury. Article 5069–1.06(a) allows creditors to establish that a miscalculation was the result of an "accidental and bona fide error" and avoid penalties for usury. Tex.Rev.Civ. Stat. Ann. art. 5069–1.06(a) (Vernon 1987) (current version at Tex. Fin.Code Ann. § 305.101 (Vernon Pamph.1998)).

■ Merely brushing the miscalculation aside as "erroneous" and presenting arguments based on the correct figure does not establish that the issue is settled as a matter of law. *See William C. Dear & Assoc., Inc. v. Plastronics, Inc.*, 913 S.W.2d 251, 254 (Tex.App.—Amarillo 1996, writ denied) (miscalculation or typographical mistake exemplifies bona fide error but must be supported by evidence of honest mistake); *Karg v. Strickland*, 919 S.W.2d 722, 725 (Tex.App.—Corpus Christi 1996, writ denied) (finding sufficient evidence that ignorance of material fact lead to miscalculations). We hold that the trial court did not err in denying appellants' motion for summary judgment. Appellants' second point of error is overruled.

*Appellees' Motion for Summary Judgment*

By their first point of error, appellants complain the trial court erred in granting appellees' motion for summary judgment.

Appellees' motion for summary judgment also contained no arguments and no citations of law, other than the penalty prescribed for usury. Appellees merely presented the factual grounds upon which they believed they were entitled to summary judgment.

In the order granting the motion, the trial court granted each ground prayed for by appellees. The trial court determined that appellants committed usury by (1) assessing late charges on each payment made between July 1987 and September 1989, (2) charging "interest on interest" a total of fourteen times, (3) charging twelve percent interest on a sum loaned that was not part of the original note, and (4) charging interest on each payment made during an "interest free" period. The court also found that Mad–Wayler had never defaulted on the loan and, therefore, never triggered the guarantee. According to the trial court's order, as a result of the unilateral and illegal actions of the appellants, the note was voided, rendering the guarantee without force and effect and releasing the guarantor, David Madsen, from any further liability or obligation on the guarantee.[3] All of these grounds rest on the common issue—whether appellants committed usury.

In response to appellees' motion for summary judgment, appellants argued that the

---

**3.** A separate suit filed by appellants against the other guarantor, Royce Brough, is pending.

"spreading doctrine" covered the late charges and other interest and had to be applied in order to avoid a finding of usury. The order granting appellees' motion for summary judgment recited precisely the grounds prayed for by appellees. It appears that, as urged by appellees, the trial court did not apply the spreading doctrine. Therefore, we will discuss the definition of usury, the spreading doctrine and its application, and the nature of the late charges before determining whether the grounds for summary judgment were meritorious.

### Usury

■ The essential elements of a usurious transaction are: (1) a loan of money, (2) an absolute obligation that the principal be repaid, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982); *Starcrest Trust v. Berry*, 926 S.W.2d 343, 354 (Tex.App.—Austin 1996, no writ). Contracting for, charging, or receiving interest greater than the maximum amount allowed by law is usury. TEX.REV.CIV. STAT. ANN. art. 5069–1.01(d) (Vernon 1987) (current version at TEX. FIN.CODE ANN. § 301.001 (Vernon Pamph.1998)); *Karg*, 919 S.W.2d at 725.

■ Usury statutes are penal in nature and must be strictly construed. *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tex.1988); *Texas Commerce Bank–Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex.1984). The purpose of the usury statute is to penalize those who intentionally charge an interest in excess of that allowed by law. *Guetersloh v. C.I.T. Corp.*, 451 S.W.2d 759, 761 (Tex.Civ.App.—Amarillo 1970, writ ref'd n.r.e.). If there is any doubt as to the legislative intent to punish the activity complained of, the doubt must be construed in favor of the lender. *Steves Sash & Door Co.*, 751 S.W.2d at 476; *Goldring*, 665 S.W.2d at 104; *Hatzenbuehler v. Call*, 894 S.W.2d 68, 69 (Tex.App.—San Antonio 1995, writ denied).

### Usury, Saving Clauses, and the Spreading Doctrine

■ The note contains a savings clause which states as follows:

It is further expressly agreed that interest on this note will not be charged in excess of the highest legal rate specified by the Laws of the State of Texas and that future adjustments will be made to avoid the payment of interest in excess of such limits.

Such a "savings clause" reflects an intent by the parties to comply with the usury laws and indicates that the spreading of interest should be used to avoid a charge of usury. *See Woodcrest Assoc., Ltd. v. Commonwealth Mortg. Corp.*, 775 S.W.2d 434, 437–38 (Tex. App.—Dallas 1989, writ denied) (citing forty-nine years of case law supporting validity of savings clauses). Unless a contract is usurious by its explicit terms, the savings clause must be given effect and enforced to avoid violation of the usury laws. *First State Bank v. Dorst*, 843 S.W.2d 790, 793 (Tex.App.—Austin 1992, writ denied); *Edmondson v. First State Bank of Mathis*, 819 S.W.2d 605, 606 (Tex.App.—Corpus Christi 1991, no writ). If the amount of interest charged has exceeded the maximum interest that may be charged on the debt, the savings clause cannot be given effect. *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 902 (Tex. App.—Corpus Christi 1989), *aff'd in part, rev'd in part on other grounds*, 811 S.W.2d 931 (Tex.1991). Texas courts have repeatedly acknowledged the validity of usury savings clauses and enforced such clauses to defeat a violation of the usury laws. *See, e.g., Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 782 (Tex.1977).

■ The Texas Supreme Court has established that contracts are tested for usury by spreading the interest over the entire term of the contract. *Tanner Dev. Co.*, 561 S.W.2d at 786–87. The term "spreading" is defined as a method of allocating the total interest provided for in a loan agreement over the full term of the loan. *Groseclose v. Rum*, 860 S.W.2d 554, 558 (Tex.App.—Dallas 1993, no writ). In *Tanner*, the Supreme Court held that when interest payments, over the whole term of the loan, do not exceed the amount authorized by law, usury penalties cannot be imposed merely because a loan's interest rate exceeds the statutory limit in any particular year. *Tanner Dev. Co.*, 561 S.W.2d at 787. As of September 1,

1975, Article 5069–1.07(a) adopted the "spreading doctrine" of *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (Tex.1937), with regard to loans secured by real estate. TEX. REV.CIV. STAT. ANN. art. 5069–1.07 (Vernon 1987) (current version at TEX. FIN.CODE ANN. § 302.101 (Vernon Pamph.1998)); *Conte v. Greater Houston Bank,* 641 S.W.2d 411, 415 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

 Appellees argue that the spreading doctrine is inapplicable for several reasons. First, they assert that the deed of trust securing the note "preserved no security interest in real property because it described a non-existent note." Appellees contend that because the deed of trust recites payments of $850, while the note reflects initial monthly installments of $1,000 (altered by agreement from $850), the deed of trust cannot conclusively be related to the promissory note at issue. We reject this contention.

 Except for the altered amount of initial payments, the face of the note and the terms reflected in the deed of trust match exactly. Moreover, the handwriting and signatures are identical. The alteration on the face of the note is initialed by the parties or their representatives. We have no doubt that the note and deed of trust are related instruments. Effectively, the promissory note and the deed of trust are one instrument and must be construed together. *Starcrest Trust,* 926 S.W.2d at 351–52. Furthermore, where there is conflict between the terms of the note and the language of the security instrument, whether deed of trust or mortgage, the latter must yield. *Odell v. Commerce Farm Credit Co.,* 124 Tex. 538, 543, 80 S.W.2d 295, 297 (Tex. Comm'n App. 1935, no writ).

 Contrary to appellees' contentions, it is not necessary to wait until the loan is paid in full before applying the spreading doctrine. *See, e.g., Groseclose,* 860 S.W.2d at 556 (doctrine applied in eighth year of ten year loan); *R.V. Indus. v. Urdiales,* 851 S.W.2d 306, 307 (Tex.App.—San Antonio 1992) (doctrine applied in sixth year of twen-

ty year loan), *rev'd on other grounds,* 851 S.W.2d 216, 216 (Tex.1993). Only if the loan is actually paid off before the end of the term must we spread the interest over a shorter period. TEX.REV.CIV. STAT. ANN. art. 5069–1.07(a); *Coppedge v. Colonial Sav. & Loan Ass'n,* 721 S.W.2d 933, 937 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

 Finally, the spreading doctrine may be applicable whether or not a note is usurious on its face. The Texas Supreme Court has held that either a contract for *or* a charge of *or* receipt of usurious interest may trigger penalties. *Windhorst v. Adcock Pipe & Supply,* 547 S.W.2d 260, 261 (Tex.1977). Therefore, any of these occurrences may permit application of the spreading doctrine to avoid the penalties for usury as well. In addition, the savings clause evidences an intent to avoid committing usury. *Woodcrest Associates,* 775 S.W.2d at 438. Thus, if it is reasonably possible to give some effect to the savings clause, we must interpret it in a manner which will avoid usury. *Id.* at 438–39.

### Late Charges as Interest

 Late charges fall into the category of a contingent additional charge which are treated as interest and added to the interest contracted for if a payment is received after the expiration of the grace period. *Dixon v. Brooks,* 678 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Late charges are not "interest" under the common-law definition of that word, but the statutory definition of "interest" covers the late charges because the definition includes compensation for the obligor's detention of money past the date it is due and payable. TEX.REV.CIV. STAT. ANN. art. 5069–1.01(a) (Vernon 1987) (current version at TEX. FIN.CODE ANN. § 301.002(a) (Vernon Pamph.1998)); *Hardwick v. Austin Gallery of Oriental Rugs, Inc.,* 779 S.W.2d 438, 443 (Tex.App.—Austin 1989, writ denied). The late charges calculated on this debt, as shown in the amortization schedule prepared at the behest of appellants, are patently erroneous [4]

---

**4.** The incorrect formula applied was:

$$[(\text{principal } balance \times 12\%) \div 365] \times \text{number of days late.}$$

and all parties acknowledge they are incorrect. Nonetheless, the late charges initially demanded by appellants must be added to the conventional interest (10%) agreed upon by the parties in arriving at the total compensation charged by appellants and in determining the applicability of the forfeiture provisions found in art. 5069–1.06. TEX.REV. CIV. STAT. ANN. art. 5069–1.06 (Vernon 1987);[5] *Dixon v. Brooks,* 604 S.W.2d 330, 333 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Watson v. Cargill, Inc., Nutrena Div.,* 573 S.W.2d 35, 42 (Tex. Civ.App.—Waco 1978, writ ref'd n.r.e.).

Under article 5069–1.06, the term "charges" means the unilateral act of placing on an account an amount due as interest. TEX.REV.CIV. STAT. ANN. art. 5069–1.01(a) (Vernon 1987) (current version at TEX. FIN. CODE ANN. § 301.002(a) (Vernon Pamph. 1998)); *see Windhorst,* 547 S.W.2d at 261; *Coppedge,* 721 S.W.2d at 936. The unilateral act can be a debiting of an amount due or an act by the lender constituting a demand for payment, *e.g.,* the inclusion of usurious interest in a statement of indebtedness submitted to the debtor. *Coppedge,* 721 S.W.2d at 936; *Concrete Constr. Supply, Inc. v. M.F.C., Inc.,* 636 S.W.2d 475, 477 n. 1 (Tex.App.—Dallas 1982, no writ). A usurious charge may be contained in an invoice, a letter, a ledger sheet or other book or document. *Danziger v. San Jacinto Sav. Ass'n,* 732 S.W.2d 300, 304 (Tex.1987); *Augusta Dev. Co. v. Fish Oil Well Servicing Co., Inc.,* 761 S.W.2d 538, 542 (Tex.App.—Corpus Christi 1988, no writ). We conclude that the amortization schedule which accompanied the demand letter sent by appellants constituted a "charge" of interest by appellants.

Appellees relied on *Fisher v. Westinghouse Credit Corp.,* 760 S.W.2d 802 (Tex.App.— Dallas 1988, no writ), to establish that the spreading doctrine cannot be applied to late charges. The court in *Fisher* declared that a late fee which is computed as interest on past due interest, accruing daily, and not a one-time charge, is considered a separate agreement to be tested for usury separate from any underlying contract. *Fisher,* 760 S.W.2d at 807. After reading the cases cited in support of this unique proposition, and noting that no other courts of appeal have adopted it, we decline to follow *Fisher.*

## Four Grounds for Summary Judgment

The trial court granted appellees' motion for summary judgment on four grounds. The first ground was that appellants committed usury in assessing late charges on late payments made between July 1987 and September 1989. Having determined that the late charges are interest and that the note contains a savings clause, we must apply the spreading doctrine to determine if the interest charged is usurious.

We find conflicting evidence in the record concerning the correct amount of the debt. The face of the promissory note shows the original debt to be $100,000. However, amortization schedules prepared by appellees start with $105,000. Appellees presented no schedules based on a beginning balance of $100,000. This strongly suggests that appellees believed their initial indebtedness was $105,000. However, because the request for admissions from appellants is missing from the record, we presume appellants admitted the correct initial balance was $100,000 and perform our calculations accordingly.

Article 5069–1.07(a) adopted the spreading doctrine set forth in *Nevels.* TEX.REV.CIV. STAT. ANN. art. 5069–1.07(a); *see also Nevels,* 129 Tex. at 196, 102 S.W.2d at 1049; *Conte v. Greater Houston Bank,* 641 S.W.2d 411, 416

---

According to the note, "all past due principal and interest due ... shall bear interest from maturity at the rate of 12% per annum." We interpret this to refer to the due payment rather than the outstanding balance of the note. Thus, the correct formula is:

[(principal *payment* + interest charges) × 12% × number of days late] ÷ 360.

We have used 360 days because a standardized accounting year has 360 days. The incorrect formula results in late charges ranging from 11%

to 56% of each installment payment or 40 to 388 times greater than the correct charges.

5. Repealed by Act of June 19, 1997, 75th Leg., R.S., ch. 1008, § 6(a) 1997 Tex. Sess. Law Serv. 3602 (Vernon 1997). This section was not recodified as the prescribed penalties were deemed too harsh. We note that the applicable penalties were greatly modified and reduced. *See* TEX. FIN.CODE ANN. § 305.001 (Vernon Pamph.1998).

(Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The *Nevels* rule provides that the lender takes the amount of the loan proceeds, multiplies it by the allowable rate of interest per year, and then multiplies that amount by the term for repayment. *Danziger*, 732 S.W.2d at 306 n. 1. The total amount is the maximum amount of interest a party is entitled to charge over the term of the loan. *Id.*

■ Applying the *Nevels* formula to the instant case, we take the loan proceeds ($100,000.00), multiply it by the rate of interest (10%), and multiply that amount by the term of repayment (3.5 years).[6] We conclude that $35,000 is the maximum amount of interest allowed in this case.

Between July 1987 and September 1989, appellants charged $21,033.65 for interest and $11,977.26 for incorrectly calculated late charges; the total amount being $33,010.91. In spite of the miscalculation of late fees, appellants have not charged more interest than is due over the term of the loan. Because the amount of interest charged as of September 1989 does not exceed the maximum interest permissible for the entire period (from July 1987 to February 1991), we find that the trial court's first ground for summary judgment is not supported by the evidence.

■ Furthermore, the savings clause permitting adjustments as necessary to avoid the charging of excess interest must be given effect, and the record reflects that appellants were not allowed to make adjustments.

In their second ground for summary judgment, appellees argued that appellants committed usury by "charging interest on interest" a total of fourteen times. According to appellees, the addition of the erroneous late charges to the outstanding balance resulted in an increase of the principal balance over the previous month's balance on fourteen separate occasions. Therefore, when the following month's interest was computed on the principal balance, it constituted a charging of

interest on interest. Appellees cite no authority to support this tortured definition.

■ Black's Law Dictionary defines "compound interest" as "interest upon interest; *i.e.*, when the interest of a sum of money is added to the principal, and then bears interest, which thus becomes a sort of secondary principal." BLACK'S LAW DICTIONARY 286 (6th ed.1990); *Spiller v. Spiller*, 901 S.W.2d 553, 557 (Tex.App.—San Antonio 1995, writ denied); *see also Bothwell v. Farmers' & Merchants' State Bank & Trust Co.*, 120 Tex. 1, 7, 30 S.W.2d 289, 291 (Tex. 1930). Past due or "matured" interest becomes a new and independent debt for which additional interest may be charged at the maximum lawful rate. *Bothwell*, 120 Tex. at 7, 30 S.W.2d at 291; *Dixon*, 678 S.W.2d at 731. The terms of the note allowed appellants to charge a late fee for overdue payments. We have already determined that such charges are interest. Such interest is not *per se* usurious. In *Crider v. San Antonio Real–Estate Bldg. & Loan Ass'n*, the supreme court stated:

> [I]t is generally held that, even when the debt bears the highest interest allowed by law, a stipulation that in case it be not paid at maturity the interest, as well as the principal, shall bear interest at the same [*i.e.* highest] rate, is not usurious. The ruling is placed upon the ground that the debtor has it in his power to avoid the additional interest by paying the debt as it falls due. Some of the cases treat the interest upon the matured interest as a penalty for the default in payment; and in *Lloyd v. Scott*, 4 Pet. 225, it is said that where a person undertakes to pay "a specific sum, exceeding the lawful interest, provided he does not pay the principal by a day certain, it is not usury, for the reason that by a punctual payment of the principal he may avoid the payment of the sum stated, which is considered as a penalty."

*Crider v. San Antonio Real–Estate Bldg. & Loan Ass'n*, 89 Tex. 597, 600, 35 S.W. 1047, 1048 (Tex.1896).

---

**6.** Under the terms of the promissory note dated June 10, 1987, the loan was to be fully paid by February 1, 1991.

■ Appellants were not only entitled to late charges, but to interest accumulated on the unpaid charges as liquidated demands. *See Spiller*, 901 S.W.2d at 556–57 (citing 13 TEX. JUR. 3d *Consumer & Borrower Protection* § 38 (1993)). A creditor is entitled to interest on money wrongfully withheld in the same manner and for the same reason as the creditor is entitled to interest on overdue principal wrongfully withheld. *Spiller*, 901 S.W.2d at 556–57. This does not result in true compounding of interest. *See Dixon*, 678 S.W.2d at 731; *see also* 13 TEX. JUR. 3d *Consumer & Borrower Protection* § 38 (1993). We find the trial court's second ground for granting summary judgment to be without merit.

■ As the third ground for summary judgment, the trial court found that appellants committed usury by charging twelve percent interest on a sum of $5,000 that was not part of the original note. We presume appellants admitted the $5,000 was not part of the original note and that they did not loan the sum directly to Mad–Wayler. However, there is some evidence in the record of an agreement between Royce Brough and Mad–Wayler concerning a debt owed by Brough to appellants and that Mad–Wayler assumed the payments on that debt. A presumption that appellants admitted no such agreement existed would run contrary to the evidence in the record. There is, however, no evidence concerning the terms of the agreement and no basis for us to make any reasonable inferences or presumptions about those terms. As the agreement was apparently between appellees and Brough, it is far more likely that the pertinent information is in the hands of the appellees than the appellants.

It is impossible to apply the test for usury on these $5,000 as the conditions, balance, term, and interest rate of the loan are un-known. We find that the trial court's finding of usury is not supported by the evidence.

■ The final ground upon which summary judgment was granted is that appellants committed usury by charging interest during an "interest free period" on each payment made. When interest is charged during an interest free period, it is usury as a matter of law. *Houston Sash & Door, Inc. v. Heaner*, 577 S.W.2d 217, 221 (Tex.1979); *Jim Walter Homes, Inc. v. Valencia*, 679 S.W.2d 29, 34 (Tex.App.—Corpus Christi 1984), *aff'd as modified*, 690 S.W.2d 239 (Tex.1985).

■ Appellees asserted that remittance by mail was authorized and that depositing the properly addressed payment with prepaid postage in the mail constituted payment. *Cox v. Gulf Ins. Co.*, 858 S.W.2d 615, 616 (Tex.App.—Fort Worth 1993, no writ); *American Cas. Co. v. Conn*, 741 S.W.2d 536, 538 (Tex.App.—Austin 1987, no writ); *Fant v. Miller*, 218 S.W.2d 901, 903 (Tex.Civ. App.—Texarkana 1949, writ ref'd n.r.e.). Appellees argued that the date payment was mailed, rather than the date of receipt, controlled the date from which calculations for late charges could be made. The note on its face does not authorize payments by mail; nevertheless, a pattern of dealing may establish such authorization. *Cox*, 858 S.W.2d at 616. The amortization schedules prepared by both appellants and appellees list the dates upon which the payments were credited to appellees' debt. Even if we were to presume appellants admitted authorizing payments by mail, and the dates of the amortization schedule reflect the date of receipt, we cannot infer the actual date the payment was mailed. It is unreasonable to impose the presumption that the mailing dates are acknowledged in appellants' admissions as that knowledge is known solely by appellees.[7]

---

7. Although the rules of procedure view postmarks as *prima facie* evidence of the date of mailing for purposes of filing documents with the court, TEX.R. CIV. P. 5; TEX.R.APP. P. 4 (amended August 15, 1997) (current version at TEX.R.APP. P. 9.2(b)(2)), postmarks are not conclusive evidence of the date an item was mailed in other contexts. *Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796, 801 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); *see also General Elec. Supp. Co. v. Utley–James of Tex., Inc.*, 857 F.2d 1010, 1012 (5th Cir.1988) (commenting on unsettled point in Texas law). Appellees made no assertions and presented no evidence of the dates they contend payments were mailed. *See Jimmy Swaggart Ministries v. City of Arlington*, 718 S.W.2d 83, 86 (Tex.App.—Fort Worth 1986, no writ) (clerk's testimony concerning preparation and dispatch of notices raised presumption of mailing date); *see also General Elec. Supp.*, 857 F.2d at 1012 (comparing holdings of Texas courts in *Haus-*

We find no evidence in the record showing the dates appellees mailed their payments. We find no basis for the trial court's finding that an "interest free period" existed, let alone was violated.

Because we find the grounds cited by the trial court in its order granting summary judgment are not established, we hold the trial court erred in granting appellees' motion for summary judgment. We sustain appellants' first point of error.

### Release of Guarantor

In the order granting summary judgment, the trial court also found that (1) no default on the note occurred which would trigger the guarantee, (2) appellants' actions had voided the note, and (3) the guarantee was of no force and effect because of the appellants' actions. Madsen was released from all liability and obligations on the guarantee. Having found that summary judgment was not proper as to Mad–Wayler, we also find that it is not proper as to Madsen. Because none of appellees' grounds for summary judgment conclusively established as a matter of law that the note is void, we hold there is no valid reason to release Madsen as a guarantor.

We affirm the trial court's order denying appellants' motion for summary judgment. We reverse the trial court's order granting appellees' motion for summary judgment and remand the case to the trial court for further proceedings.

*mann* and *Jimmy Swaggart Ministries* with re-

gards to proof of mailing).