**Affirmed and Opinion filed November 22, 2016.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-14-00861-CV

**THERESA WASHINGTON-JARMON, Appellant**

**V.**

**ONEWEST BANK, FSB, Appellee**

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-24857**

## O P I N I O N

Appellant, Theresa Washington-Jarmon, sued appellee, OneWest Bank, FSB ("OneWest"), based on its plan to foreclose on appellant's home, after the death of her spouse, pursuant to a reverse mortgage previously obtained by the spouse. Relative to the claims involved on appeal, (1) foreclosure is permitted only upon the death of "All Borrowers," and appellant contends she is a borrower, and (2) appellant alleges OneWest misrepresented the amount due to prevent foreclosure. The trial court granted summary judgment in favor of OneWest. We affirm.

# I. BACKGROUND

Appellant and her husband, Shelley Jarmon ("Jarmon"), purchased a home in Spring, Texas. In 2005, the couple experienced financial difficulties because of Jarmon's medical issues. They acquired a home equity loan for $165,000. When they had exhausted those proceeds in 2009, Jarmon obtained a Home Equity Conversion Mortgage, commonly known as a "reverse mortgage" from OneWest's predecessor, to pay off the home equity loan.[1]

A reverse mortgage allows homeowners, age 62 or older, to convert home equity into periodic payments or advances made by the lender over the life of the homeowners. *See* J. Alton Alsup, *The New and Improved Texas Reverse Mortgage*, 55 Consumer Fin. L.Q. Rep. 207, 209 (2001); *see also Larsen v. OneWest Bank, FSB*, No. 14-14-00485-CV, 2015 WL 6768722, at *4 (Tex. App.—Houston [14th Dist.] Nov. 5, 2015, no pet.) (mem. op.) (citing *Alsup* when explaining features of a reverse mortgage). An initial advance typically is made at loan closing to cover closing costs and payoff any existing lien, and the balance of the credit is then advanced in periodic payments according to the plan. *See Alsup*, supra, at 209. Interest accrues only on the amounts advanced over the term of the loan. *See id.* The homeowners have no obligation to repay any principal or interest during their lifetimes unless they sell or transfer the home, permanently cease occupying the home as their principal residence, or fail to properly maintain the property, timely pay property taxes and insurance premiums, or maintain the priority of the reverse mortgage lien. *See id.* A reverse mortgage is a non-recourse debt, meaning the lender may look only to the proceeds of the sale of the home for repayment when the debt becomes due, typically upon the death of the last of the

---

[1] OneWest was not the original lender but acquired the loan through subsequent transactions, which are not germane to the appellate issues. For ease of discussion, we will refer to OneWest throughout this opinion as though it were the original mortgagee.

homeowners to die or upon one of the other maturing events that permit the lender to accelerate the debt. *See id.* at 209–10. Neither a deceased homeowner's estate nor his heirs are liable for any deficiency that may result after the sale. *See id.* at 210. Since 1998, the Texas Constitution has expressly authorized a reverse mortgage as a type of debt that may be secured by a valid lien against homestead property. *See* Tex. Const. art. XVI, § 50(a)(7); *see also Larsen*, 2015 WL 6768722, at *5.

Jarmon was age 66 at the time he obtained the reverse mortgage, but appellant had not reached age 62 and thus was not eligible to be a borrower on a reverse mortgage. On February 25, 2009, multiple documents, entitled as follows, were executed to consummate the transaction:

### Residential Loan Application for Reverse Mortgages

Although both spouses are shown on this application as title holders, only Jarmon's name is included in the space designated for "Borrower's Name." The space for "Co-Borrower's Name" is left blank. Only Jarmon signed the application.

### Texas Home Equity Conversion Loan Agreement

The loan agreement states it is made between Jarmon as "Borrower" and OneWest. Only Jarmon signed the agreement.

### Adjustable Rate Note (Home Equity Conversion)

At the outset, the note defines "Borrower" to mean "each person signing at the end of this Note." Only Jarmon signed the note. The note permitted a maximum principal advance of $412,500, and Jarmon agreed to repay all amounts advanced plus interest. The note states that the promise to pay is secured by a deed of trust dated the same day. The note lists several different events upon which

3

"Lender may require immediate payment in full of all outstanding principal and accrued interest," including "if . . . All Borrowers die . . . ."

**Adjustable Rate Home Equity Conversion Deed of Trust**

At the outset, the deed of trust states "The trustor is SHELLY JARMON and THERESA WASHINGTON-JARMON, MARRIED whose address is [property address] ("Borrower")." The deed of trust is signed by both Jarmon and appellant. Under each signature line is the word, "Borrower." The deed of trust outlines events upon which "Lender may require immediate payment in full of all sums secured by" the deed of trust and may invoke the power of sale, including "All Borrowers die . . . ."

**U.S. Department of Housing and Urban Development ("HUD") Settlement Statement**

This statement, which itemizes the loan disbursements, lists only Jarmon in the box for "Name & Address of Borrower." Only Jarmon signed this document.

**General Warranty Deed**

Appellant signed this warranty deed, conveying her interest in the property to Jarmon, subject to all valid encumbrances.

**Non-Borrower Spouse Ownership Interest Certification**

This document, setting forth various acknowledgements, is signed by Jarmon as "Borrower" and appellant as "Non-Borrower Spouse" and includes the following statement:

> [T]he non-borrowing spouse acknowledges . . . that . . . She understands that should [her] spouse predecease [her] . . . and unless another means of repayment is obtained, the home where [she] resides may need to be sold to repay the reverse mortgage loan and [she] may be required to move from [her] residence.

4

Both spouses also acknowledge that they had been given ample opportunity to consult with independent legal and tax experts of their own choosing regarding "ownership or vesting of real property that will serve as collateral for the reverse mortgage" and the spouses determined, either on their own or after consultation with experts, that entering into a reverse mortgage was in their best interest.

Upon closing, the loan proceeds of $178,547.23 were disbursed, which included the amount to discharge the home equity loan and closing costs. Jarmon died on December 29, 2010. In early 2011, OneWest wrote to Jarmon's estate, requesting that it advise OneWest within 30 days whether it intended to pay the loan balance, which was $192,086.16 at that time, and stating that absent a response, OneWest must institute foreclosure proceedings. When no arrangements to pay the balance had been made approximately a year later, OneWest initiated foreclosure proceedings.

Appellant sued OneWest for breach of contract and violations of the Texas Debt Collection Act ("the Act"). Appellant alleged that she is a considered a borrower under the deed of trust and therefore the instrument permits foreclosure only after both spouses have died. Appellant claimed OneWest breached the deed of trust by (1) instituting foreclosure proceedings before appellant's death, (2) failing to fund the full amount permitted under the loan, and (3) failing to give appellant an opportunity to sell the home or otherwise cure the default before instituting foreclosure proceedings. Appellant claimed that OneWest violated the Act by (1) declaring the loan in default and threatening to foreclose before the death of both spouses, and (2) misrepresenting that appellant owes more than the amount advanced under the loan. Appellant sought (1) declarations that the lien is invalid and OneWest must forfeit all amounts owed on the loan for failing to disburse all the loan funds or the "total amount owed be reduced to reflect the

5

equity in the property to conform the loan with the requirements of the Texas Constitution," and (2) damages of $234,000, representing the amount allegedly never disbursed but demanded against the home equity, and (3) damages for mental anguish. Appellant also sought temporary injunctive relief.

The trial court signed a temporary restraining order followed by a temporary injunction, precluding OneWest from foreclosing pending a final judgment. OneWest filed a traditional and no-evidence motion for summary judgment, to which appellant responded.[2] Appellant also filed a motion for summary judgment. The trial court signed an order denying appellant's motion, granting OneWest's motion, and dismissing all of appellant's claims with prejudice. Appellant filed a motion for new trial, which was overruled by operation of law.

## II. ANALYSIS

In two issues, appellant contends the trial court erred by (1) granting OneWest's motion for summary judgment,[3] and (2) failing to rule on appellant's motion for judicial notice.

As OneWest asserted in its motion, two of appellant's claims on which she challenges summary judgment on appeal depend on her being classified as a borrower under the loan. OneWest moved for summary judgment on those claims and on appellant's additional claim alleging a misrepresentation in violation of the Act irrespective of whether she is a borrower. We will analyze separately the two categories of claims because the summary-judgment grounds are different.

---

[2] OneWest previously filed another motion for summary judgment, which was denied. Our references to the motion for summary judgment mean the second one, which was granted.

[3] Appellant challenges only the grant of OneWest's motion for summary judgment and does not challenge denial of her own motion.

Further, we will address the contention regarding judicial notice as essentially a sub-issue relative to the first category of claims.

## A.    Claims Based on Appellant's Alleged Status as a Borrower

On appeal, appellant challenges summary judgment on two of her claims that depend on her being classified as a borrower under the reverse mortgage: (1) breach of contract; and (2) violation of the Act by attempting to foreclose before the death of both spouses.  Because the loan is due and payable upon the death of "All Borrowers," OneWest could not have breached the deed of trust by foreclosing before the death of both spouses if appellant is not a borrower. Additionally, OneWest could not have violated the pertinent provision of the Act by threatening to foreclose before the death of both spouses if appellant is not a borrower.  *See* Tex. Fin. Code Ann. § 392.301(a)(8) (West 2016) (prohibiting debt collector from threatening to take an action prohibited by law).[4]

OneWest moved for summary judgment on these claims on both traditional and no-evidence grounds.  When, as in this case, a trial court's order granting summary judgment does not specify the ground relied on for its ruling, we affirm the summary judgment if any theory advanced is meritorious.  *Carr v. Brasher*,

---

[4] On appeal, appellant does not challenge summary judgment on her pleaded claims that OneWest breached the contract by failing to disburse all of the loan funds and failing to give appellant an opportunity to cure before initiating foreclosure proceedings; her focus is on the claims based on OneWest allegedly attempting to foreclose before the death of all borrowers. Appellant has waived any challenge to summary judgment on the claims that she fails to address in her brief.  *See Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 384 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding appellant waived challenge to summary judgment on claim to the extent it was based on one alleged wrongdoing of defendant by advancing argument on appeal only with respect to a different alleged wrongdoing); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (recognizing that, although we reasonably and liberally construe briefs, appellant must present some specific argument and analysis to attack summary-judgment ground). In fact, buried in appellant's summary-judgment response was an assertion that she is nonsuiting her request for a declaratory judgment, which was based on the alleged failure to disburse all of the funds, although the record does not contain any separate non-suit.

7

776 S.W.2d 567, 569 (Tex. 1989). We conclude the trial court properly granted traditional summary judgment on these claims, so we set forth only that standard in this section.

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the motion and summary-judgment evidence facially establish the movant's right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine issue of material fact sufficient to defeat summary judgment. *See Arguelles v. Kellogg Brown & Root, Inc.*, 222 S.W.3d 714, 723 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We review a summary judgment *de novo*. *Provident Life*, 128 S.W.3d at 215. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in its favor. *Id.*

In its motion, OneWest asserted that appellant is not a borrower when all of the documents comprising the transaction are considered together or alternatively, the note controls over the deed of trust. Appellant contends she is a borrower because (1) the deed of trust shows she is a borrower and it is the only document that should be considered when determining the rights between appellant and OneWest, and (2) under federal law, a lender may not foreclose on a reverse mortgage until the spouse who did not sign the note has also died.

### 1.     Whether appellant is a borrower based on the loan documents

As OneWest asserts, the general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *see Fort Worth Indep. Sch. Dist. v. City of*

8

*Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). More specifically, a deed of trust is construed along with the note it is intended to secure. *Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. App.–Houston [14th Dist.] 2009, no pet.). Further, if there are conflicting terms in a note and a deed of trust, the terms of the note control. *See Larsen*, 2015 WL 6768722, at \*12; *Pentico v. Mad–Wayler, Inc.*, 964 S.W.2d 708, 715 (Tex. App.—Corpus Christi 1998, pet. denied) (citing *Odell v. Commerce Farm Credit Co.*, 80 S.W.2d 295, 297 (Tex. 1935)); *see also In re Tucker*, 391 B.R. 404, 409 (Bankr. S.D. Tex. 2008). Additionally, "[w]ords used by the parties in a contract do not necessarily control the substance of the relationship, nor do the terms used by the parties in referring to the arrangement." *Stephanz v. Laird*, 846 S.W.2d 895, 899 (Tex. App.— Houston [1st Dist.] 1993, writ denied). When the record demonstrates the actual effect of the arrangement resulting from an agreement is to create a status different from that stated in the language of the contract, the parties' designation will not control. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978).

As mentioned above, other than the deed of trust, all documents expressly show only Jarmon as a borrower. Significantly, the note which creates the debt identifies only Jarmon as a borrower and provides that the debt becomes due and payable upon the death of "All Borrowers." We recognize that the deed of trust uses the term "Borrower" to refer to both spouses—after identification of the trustors at the outset of the instrument and under the signature lines. The deed of trust also provides the debt is due and the property subject to foreclosure upon the death of "All Borrowers." But, construing the deed of trust together with the rest of the loan documents, the references on the deed of trust do not make appellant a borrower.

Unlike the loan application, the loan agreement, and the note, which expressly define Jarmon as a borrower, the parenthetical "("Borrower")" after identification of both spouses as trustors on the deed of trust seems to be used as a shorthand term to refer to them, and then the signature lines are consistent by using the same term to refer to the signators. Nonetheless, the note is the instrument creating Jarmon's debt whereas the deed of trust is the document securing performance of the debt. Consequently, we look to the note as the instrument defining the parties to the obligation. In fact, the deed of trust states,

> Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable Rate Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of . . . $412,500.00 . . . ."

Therefore, the deed of trust's own terms negate that the appellant is a borrower, despite the shorthand references therein, because that instrument looks to the note to define the debt; the deed of trust references the actual borrower as the party to the note—only Jarmon. Alternatively, to the extent the deed of trust may be construed as identifying appellant as a borrower, it conflicts with the terms of the note, which control. *See Larsen*, 2015 WL 6768722, at *12; *Pentico*, 964 S.W.2d at 715.

In fact, appellant even signed a document acknowledging she is not a borrower and the loan would become due and payable and she might be required to leave the home upon the death of Jarmon. Moreover, due to her age, appellant did not even qualify as a borrower on a reverse mortgage. Additionally, as part of the

10

transaction, appellant conveyed her interest in the property to Jarmon, further negating that she is a borrower of funds secured by a lien against the property.

Accordingly, we agree with OneWest's explanation that the reason for requiring appellant's signature on the deed of trust (albeit on a signature line with the designation "Borrower" and with a parenthetical reference to "Borrower" after identifying appellant as a trustor) was to comply with the law, requiring that appellant be made a party to the deed of trust. Specifically, under Texas statutory law, "Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse." Tex. Fam. Code Ann. § 5.001 (West 2006). And, the Texas Constitution defines "Reverse mortgage" as "an extension of credit" that, among other features, "is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse." Tex. Const. art. XVI, § 50(k)(1).

After briefing in the present case, our court concluded a spouse was not a borrower on a reverse mortgage in a case with facts and documents substantially similar to those in the present case, where OneWest was also the lender: Husband obtained the reverse mortgage on a home he and his wife owned, but she was too young to qualify; only Husband, as borrower, signed the loan application and the note, which made the obligation due and payable upon the death of "All Borrowers"; both spouses signed the deed of trust, which had a reference to Wife as a "Borrower," and provided the lender may require immediate payment of all sums secured by the instrument if "All Borrowers die"; Wife executed a warranty deed conveying her interest in the home to Husband; and both spouses signed a "Non-Borrower Spouse Ownership Interest Certification," with Wife acknowledging that the home may need to be sold to repay the debt and she may

11

be required to move from the home if Husband predeceases Wife. *See Larsen,* 2015 WL 6768722, at *1–2.

After Husband's death, OneWest (which acquired the loan after closing) sought the balance due on the loan and announced its intent to foreclose. *See id.* Wife sued OneWest alleging, inter alia, that OneWest could not foreclose because Wife was a borrower under the deed of trust and that instrument required immediate payment only if all borrowers have died. *See id.* The trial court granted OneWest's motion for summary judgment, which contended that Wife was not a borrower under the reverse mortgage. *See id.* at *3–4.

Like the present case, OneWest asserted Wife was not a borrower because only Husband was a borrower in the loan agreement and note, all documents must be construed together, and the note controlled over the deed of trust. *See id.* at *9. We rejected Wife's appellate contentions that the deed of trust was determinative as to borrower status, that she was a borrower under the reverse mortgage, and that OneWest could not foreclose before Wife's death. *See id.* at *9–12.

We recited the principle that the note controls over the deed of trust. *See id.* at *12. Wife argued the principle did not apply because the deed of trust complied with federal law by listing Wife as a borrower whereas the note violated federal law by not listing Wife as a borrower. *See id.* at *9–12. Wife asserted that under federal law, a reverse-mortgage loan does not become due until the death of both homeowner spouses. *See id.* at *10. Appellant in the present case makes a similar argument, and thus we will later discuss the *Larsen* court's analysis. However, after rejecting the federal-law argument, the *Larsen* court remarked that on appeal, Wife failed to otherwise challenge OneWest's arguments that Wife was not a borrower when all documents are construed together or present any other reason that the note should not control over the deed of trust. *See id.* at *12.

12

However, in the present case, appellant proffers additional reasons to challenge OneWest's arguments. Therefore, we will conduct an independent analysis of appellant's contentions while recognizing that *Larsen* is precedent that the note controls over the deed of trust and demonstrates appellant is not a borrower unless one of appellant's arguments (not raised in *Larsen*) has merit. *See id.*

Appellant contends the cases relied on by OneWest in its summary-judgment motion are distinguishable, as they involve different facts than the present case. However, we conclude the general principles discussed in those cases are applicable in the present case despite those courts applying the principles to different facts. Specifically, in the present case, all instruments were executed on the same day. Although the note defines the debt and the deed of trust secures payment of the debt, these instruments necessarily constitute one transaction. It is axiomatic that OneWest would not have lent the money if there were no deed of trust securing the loan and OneWest would have no deed of trust if there were no debt. As mentioned above, the deed of trust looks to the loan agreement and the note to define the obligation secured by the deed of trust, and the note refers to the deed of trust as the security for the loan. Consequently, all instruments were necessary to effectuate a reverse mortgage. All of the instruments construed together reflect the only borrower was Jarmon despite the label on the deed of trust. Or, even if appellant may be read as a borrower under the deed of trust, the note controls over the deed of trust.

Appellant also contends that the principle regarding construing instruments together does not apply here because this case involves separate contracts, with separate parties. But, the Texas supreme court has stated that instruments may be construed together or treated as one contract although they are not between the

13

same parties. *See Jones*, 614 S.W.2d at 98. In the deed of trust, to which appellant was a party, she agreed that the obligation secured by the instrument was the obligation defined in the note (again, the debt on which only Jarmon was a borrower) although appellant was not a party to the note. Thus, by signing the deed of trust, appellant essentially agreed that the documents must be construed together to effectuate the reverse mortgage. Therefore, we disagree that the fact Jarmon, but not appellant, was a party to all the instruments precludes construing them together to determine the identity of the borrower.

Finally, appellant argues that one case cited by OneWest supports appellant's position. In *Bierworth v. BAC Home Loans Servicing, L.P.*, the Austin Court of Appeals stated, "this Court [has] rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations—the note against the borrower and the lien against the real property." No. 03–11–006444–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) (citing *Stephens v. LPP Mortg.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied)). We disagree that *Bierworth* failed to apply the general rule of construction. In that case, the debtor challenged the current lender's authority to foreclose pursuant to a deed of trust after the debtor's default on a note, claiming the party that purportedly assigned the instruments to the current lender had no right to assign the note. *See id.* at *1–3. The assignor was expressly identified in the deed of trust but not in the note containing the right of transfer. *See id.* The court of appeals, in the language quoted above, rejected the argument that the lender therefore was precluded from exercising its remedies under the deed of trust. *See id.* at *3 ("'roundly reject[ing]' the 'show-me-the-note' theory"). The court affirmed the general rule—the note and deed of trust must be read together in evaluating the

authority to assign the note and the deed of trust. *See id.* at *4. Accordingly, we reject appellant's contentions that OneWest failed to negate appellant's status as a borrower under the applicable principles for construing the instruments.

## 2. Appellant's contention regarding federal law

Appellant also contends that pursuant to 12 U.S.C. § 1715z-20(j), a lender may not foreclose under a reverse mortgage until the spouse who did not sign the note has also died and that this interpretation of federal law is supported by *Bennett v. Donovan*, 703 F.3d. 582 (D.C. Cir. 2013). As mentioned above, the *Larsen* Wife made a similar argument when arguing that the deed of trust complied with federal law by making Wife a borrower and thus controlled over the note. *See Larsen*, 2015 WL 6768722, at *10. Wife asserted that 12 U.S.C. § 1715z-20(j) provides that a reverse mortgage loan does not become due until the homeowner's death and homeowner includes a spouse. *See id.*

We recognized that 12 U.S.C. § 1715z-20, entitled "Insurance of home equity conversion mortgages for elderly homeowners," authorizes the Secretary of HUD to implement a program for insuring reverse mortgages. *See id.* at *11 (citing 12 U.S.C. § 1715z-20(a)–(r)). The statute provides that the "Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner." 12 U.S.C. § 1715z–20(j). However, we emphasized that subsection (j) focuses only on insurance and nothing in the statute speaks to when a lender is allowed to foreclose. *See Larsen*, 2015 WL 6768722, at *11 (citing 12 U.S.C. § 1715z-20(j)).

15

We also held that *Bennett* did not support Wife's contention that 12 U.S.C. § 1715z–20(j) precluded foreclosure until both she and her husband died. *See Larsen*, 2015 WL 6768722, at *11–12. We concluded that *Bennett* neither addressed nor negated a lender's right to foreclose on a surviving spouse's home after the death of the spouse who was the borrower under a reverse mortgage. *See id.* (citing *Bennett*, 703 F.3d at 586–90). Because we are bound by our court's construction of 12 U.S.C. § 1715z20(j) and *Bennett*, we reject appellant's contention that federal law precludes foreclosure until both Jarmon and appellant have died.

Finally, appellant complains the trial court failed to take judicial notice of the above-cited federal law upon appellant's request. However, any error in failing to take judicial notice was harmless because the law does not support appellant's position, for the reasons discussed above. *See Magee v. Ulery*, 993 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (applying harmless error analysis to trial court's refusal to take judicial notice).

In summary, because appellant is not a borrower under the reverse mortgage as a matter of law, the trial court did not err by granting summary judgment on all claims that depended on appellant being classified as a borrower.

## B. Claim Based on Alleged Misrepresentation

Appellant pleaded that OneWest violated the Act by misrepresenting that appellant must pay \$412,500[5] to avoid foreclosure, which exceeded the amount due on the loan. *See* Tex. Fin. Code Ann. § 392.304(a)(8) (West 2016) (forbidding debt collector from misrepresenting the character, extent, or amount of a consumer

---

[5] In her petition, summary-judgment response, and appellate brief, appellant refers to \$410,500 but the document purportedly showing the misrepresentation references \$412,500. Thus, we will refer to the alleged misrepresentation as involving \$412,500.

debt); *id.* (a)(19) (West 2016) (forbidding debt collector from using any other false representation or deceptive means to collect a debt); *id.* § 392.403 (West 2016) (providing that a person may sue for injunctive relief and damages based on a debt-collection practice prohibited under the Act).

OneWest moved for summary judgment on this claim on both no-evidence and traditional grounds. We conclude the trial court properly granted no-evidence summary judgment.

After adequate time for discovery, a party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Unless the respondent produces summary-judgment evidence raising a genuine issue of material fact, the trial court must grant the motion for summary judgment. Tex. R. Civ. P. 166a(i); *Urena*, 162 S.W.3d at 550.

In its motion for summary judgment, OneWest asserted there is no evidence that it violated the Act, specifically that it ever claimed appellant must pay $412,500 to satisfy the debt.[6] In her response and on appeal, appellant relies on (1) the Notice of Substitute Trustee's Sale prepared in April 2012, purportedly showing an amount due of $412,500, and (2) the August 2012 statement for the loan, showing a balance of $207,861.75. According to appellant, these documents constituted evidence that OneWest represented an amount greater than the actual balance was owed.

---

[6] Appellant suggests the trial court could not grant the no-evidence motion because it previously denied a no-evidence motion on the same issues. However, the trial court is not precluded from granting a motion for summary judgment after denying another. *See Hunte v. Hinkley*, 731 S.W.2d 570, 571 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.).

However, the Notice of Substitute Trustee's Sale does not state that the balance is $412,500. Rather, the notice references $412,500 as the total amount secured by the deed of trust, which is consistent with that instrument showing it secures the maximum principal amount of $412,500, although the full amount permitted under the loan was never disbursed. Nothing on the notice states $412,500 is the amount that must be paid to satisfy the debt. Rather, the correspondence to Jarmon's estate enclosing the Notice of Substitute Trustee's Sale advised that the amount necessary to prevent foreclosure could be ascertained by contacting the attorneys handling the foreclosure proceeding. Because the only evidence presented by appellant does not raise a fact issue on whether there was a misrepresentation regarding the amount of the debt, the trial court did not err by granting summary judgment on appellant's claim for a violation of the Act.

In summary, the trial court did not err by granting summary judgment in favor of OneWest on all of appellant's claims or commit harmful error by any refusal to take judicial notice of federal law. Accordingly, we overrule both of appellant's issues and affirm the trial court's judgment.

/s/    John Donovan
       Justice


Panel consists of Justices Jamison, Donovan, and Brown.