James T. Campbell, Justice
Appellants Anibal J. Duarte-Viera, Edward M. Reiss and Antonio P. Pardo, guarantors of a note held by appellee Fannie Mae, appeal a final summary judgment awarding Fannie Mae $732,708.31. We will affirm the judgment.
Background
In 2009, La Fiesta Apartments, LLC obtained a real estate loan from Arbor *261 Commercial Funding, LLC for the purchase of a San Antonio apartment complex.[1] Duarte-Viera, Reiss and Pardo (the Guarantors), owners of La Fiesta, signed a guaranty agreement. By the guaranty's terms, the Guarantors "absolutely, unconditionally and irrevocably" guaranteed the "full and prompt payment when due, whether at maturity or earlier, by reason of acceleration or otherwise ... and the full and prompt performance when due" of three categories of obligations: (a) "The entire Indebtedness"; (b) "The payment and performance of all of [La Fiesta's] obligations under Section 18 of the [deed of trust] [dealing with environmental hazards]"; and (c) "All costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by [Arbor] in enforcing its rights under this Guaranty." Arbor's interest was subsequently assigned to Fannie Mae.
In 2013, Fannie Mae declared the loan in default. Fannie Mae then conducted a foreclosure sale, at which it was sole bidder and acquired the apartment complex for a credited bid of $2,376,918.48. Fannie Mae sued the Guarantors for the deficiency. The Guarantors plead an offset based on the property's fair market value on the date of sale. Fannie Mae moved for summary judgment and the Guarantors responded. The trial court rendered final summary judgment in favor of Fannie Mae and then denied the Guarantors' motion for new trial after a hearing.
Analysis
In this court, the Guarantors present three issues, contending (1) Fannie Mae did not meet its summary judgment burden of proof to show La Fiesta defaulted in payment of the indebtedness; (2) it failed to meet its summary judgment burden of proof of the amount of the deficiency; and (3) the trial court erred by striking the Guarantors' summary judgment evidence in support of their statutory offset based on the property's fair market value.
Standard of Review on Summary Judgment
We review de novo the trial court's ruling on a motion for summary judgment. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex.2009). The movant for summary judgment filing a traditional motion must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. See TEX.R. CIV. P. 166a(c) ; Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215-16 (Tex.2003). A movant seeking affirmative relief by summary judgment must prove each element of its cause of action as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.1999). "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex.2005) (footnote omitted). Only if the movant meets its summary judgment burden does the burden shift to the non-movant to produce evidence demonstrating the existence of a genuine issue of material fact precluding summary judgment. Steel, 997 S.W.2d at 222-23. The court takes as true evidence favorable to the nonmovant, indulges every reasonable inference in favor of the nonmovant, and resolves any doubts in favor *262 of the nonmovant. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.2005) ; Knott, 128 S.W.3d at 215. "[A]n objection that an affidavit is conclusory is an objection to the substance of the affidavit that can be raised for the first time on appeal." Green v. Indus. Specialty Contractors, Inc., 1 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 1999, no pet.) ; see also Wal-Mart Stores, Inc. v. Merrell, 313 S.W.3d 837, 839 (Tex.2010) (per curiam) (noting in summary judgment case that conclusory statements cannot support a judgment even when no objection was made to the statements at trial). A conclusory statement is one that is not susceptible to being readily controverted and does not provide the underlying facts to support the conclusion. Hon. David Hittner & Lynne Liberato, Summary Judgments in Texas: State and Federal Practice, 52 HOUS. L.REV. 773, 842 (2015) (citing Eberstein v. Hunter, 260 S.W.3d 626, 630 (Tex.App.-Dallas 2008, no pet.) ).
Issue One-Proof of Default
A plaintiff seeking to enforce a guaranty must prove: "(1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor." Fannie Mae v. United States Prop. Solutions, No.H-08-3588, 2011 WL 66161, at *5, 2011 U.S. Dist. LEXIS 1954, at *14 (S.D.Tex. Jan. 10, 2011) (citing Byrd v. Estate of Nelms, 154 S.W.3d 149, 157 (Tex.App.-Waco 2004, pet. denied) ). The First Court of Appeals summarized the third element of proof of liability under a guaranty as requiring proof of the debtors' "default on the underlying note, so as to activate [the guarantors'] liability under the guaranties." Kaminetzky v. Park Nat'l Bank of Houston, No. 01-96-01002-CV, 2001 WL 832350, at *4, 2001 Tex.App. LEXIS 4939, at *10 (Tex.App.-Houston [1st Dist.] July 19, 2001, pet. denied) (mem. op., not designated for publication). "A guarantor may require that the terms of his guaranty be followed strictly; the guaranty agreement may not be extended beyond its precise terms by construction or implication." FDIC v. Attayi, 745 S.W.2d 939, 943 (Tex.App.-Houston [1st Dist.] 1988, no writ) (italics omitted).
Specifically, the Guarantors assert Fannie Mae failed to prove La Fiesta defaulted under the loan documents because its evidence of default amounted to nothing more than conclusions unsupported by background facts.
Fannie Mae's summary judgment evidence of default relied on the affidavit of its senior asset manager for multifamily loss mitigation, Ross Heath. Heath indicates his responsibilities include "monitoring loans in which Fannie Mae invests, and pursuing loss mitigation and recovery activities in connection with defaulted loans." He adds he is one of the Fannie Mae employees responsible for monitoring the La Fiesta loan.
The only paragraph in Heath's affidavit that directly addresses La Fiesta's default reads, "On or before March 2013 [La Fiesta] defaulted on the Loan. After [La Fiesta] defaulted, Fannie Mae posted to foreclose the Property in May 2013, and then consummated the foreclosure sale on June 4, 2013. At such sale, Fannie Mae was the sole bidder, and purchased the Property with a bid of $2,376,918.48."
We agree, however, with Fannie Mae's argument that we also should consider Heath's statement in the last paragraph of the affidavit, which addressed the necessity for Fannie Mae to retain counsel. That paragraph begins, "As a result of [La Fiesta's] failure to pay the amounts due and owing under the Note, and [the Guarantors']
*263 failure to pay the amounts due and owing under the Guaranty, Fannie Mae was forced to engage" legal counsel. Together, Fannie Mae contends, these statements amount to conclusive proof of La Fiesta's default, thus triggering the Guarantors' liability.
The Guarantors rest their argument chiefly on Skeen v. Glenn Justice Mortg. Co., Inc., 526 S.W.2d 252 (Tex.Civ.App.-Dallas 1975, no writ). In Skeen a corporation made a promissory note secured by a deed of trust lien on real property. As additional security, individuals named Skeen signed a contract of guaranty. After a foreclosure sale, a deficiency remained, and the assignee of the note, deed of trust, and guaranty sued the corporation and the Skeens to recover the deficiency. Id. at 253. When the assignee obtained summary judgment, the Skeens appealed, challenging the sufficiency of the summary judgment proof of default. The proof relied on affidavit testimony that:
Upon the default of [the corporation] in the payment of the Note, the entire unpaid balance of principal and accrued interest was declared immediately due and payable; and upon the failure and refusal of [the corporation] to pay the Note according to the terms and conditions thereof, I was, as trustee, requested by the owner and holder of the Note to sell the Property at public auction.
526 S.W.2d at 254. The court held the Skeens' liability was not conclusively shown, concluding "that the bare statement of 'default ... in payment' amounts to a legal conclusion on the part of the affiant and cannot support the summary judgment." Id.
Fannie Mae relies on Ecurie Cerveza Racing Team, Inc. v. Texas Commerce Bank-Southeast, 633 S.W.2d 574 (Tex.App.-Houston [14th Dist.] 1982, no writ), which also involved a challenge to the summary judgment affidavit offered to support judgment on a guaranty, and which distinguished Skeen . Id. at 575.
Fannie Mae reads Ecurie Cerveza to say the affidavit offered there was not conclusory because it said the debtor "defaulted in payment." 633 S.W.2d at 575. The addition of the words "in payment," Fannie Mae argues, made the difference and distinguished the affidavit from that in Skeen . The argument misreads the Ecurie Cerveza opinion. The court did not say the presence of the words "in payment" distinguished the affidavit from that in Skeen . The affidavit in Skeen also included the words "in payment." 526 S.W.2d at 254 ("the bare statement of 'default ... in payment' amounts to a legal conclusion").
The distinction the Ecurie Cerveza court saw between the facts before it and those in Skeen dealt instead with the terms of the defaulted note. Under the notes in Ecurie Cerveza, the court said, "only one condition constitutes default in payment." 633 S.W.2d at 575. But in Skeen, it continued, "the terms of the note allowed several acts or omissions to be treated as default in payment." Id. In other words, a statement the debtor had defaulted in payment effectively specified the event of default because there was only one possible default in payment. Not so in Skeen, because there were several possible events of default involving a default in payment.[2]
*264 There is, however, a significant difference in La Fiesta's loan documents and those described in Skeen and Ecurie Cerveza . The deed of trust[3] La Fiesta signed contains a section specifying the events of default under the instrument. By the first item on the list, the parties agreed that "any failure by [La Fiesta] to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document" would constitute an event of default. The deed of trust goes on to list eight other occurrences that constitute events of default, but none of them speak directly of a failure to pay an amount due under the Note or another loan document. Heath's statements that La Fiesta defaulted on the Loan and failed "to pay the amounts due and owing under the Note" could have provided more detail, but they are statements of fact identifying the particular manner in which La Fiesta defaulted. The trial court did not err by treating the statements as conclusive proof of La Fiesta's default, thus triggering the Guarantors' liability. The Guarantors' first issue is overruled.
Issue Two-Proof of Amount of Deficiency
Heath's affidavit also incorporated its exhibit 4, his calculation of the deficiency. The calculation contains entries for the loan's principal balance at the time of foreclosure, the "regular interest, default interest and late charge" then owed, the "servicer advance and other fees paid by Fannie Mae," and the prepayment premium. From the total of those amounts Heath deducted an "insurance claim," a "credit for funds swept to Fannie Mae," and the foreclosure bid amount of $2,376,918.48, leaving a deficiency equal to the amount of the prepayment premium, $732,708.31.
A plaintiff moving for summary judgment for recovery on a promissory note must establish "a certain balance is due and owing on the note." Rockwall Commons Assocs. v. MRC Mortg. Grantor Trust I, 331 S.W.3d 500, 505 (Tex.App.-El Paso 2010, no pet.) (citing TrueStar Petr. Corp. v. Eagle Oil & Gas Co., 323 S.W.3d 316, 319 (Tex.App.-Dallas 2010, no pet.).
The Guarantors contend Fannie Mae's summary judgment evidence of the amount of the deficiency fails because (a) it does not show La Fiesta missed a loan payment so as to incur a late charge and interest at the default rate; (b) it does not show the date the note was accelerated, which date is necessary to determine the U.S. Treasury security yield rate to be included in the calculation of the prepayment premium; and (c) it does not provide detail for the "servicer advance and other fees paid by Fannie Mae."
Evidence of Missed Loan Payment
The Guarantors first contend Fannie Mae's summary judgment evidence failed to show La Fiesta incurred late charges and interest at the default rate. Here, as with their first issue, the Guarantors cite Skeen, 526 S.W.2d at 255, to support the argument Heath's affidavit merely stated the conclusion that an unspecified default occurred. The Guarantors correctly state that late charges and the default interest rate are incurred under the terms of La Fiesta's note if monthly installments or other amounts due are not timely paid. Because we have concluded that Heath's affidavit was not conclusory but contained statements of fact regarding La Fiesta's failure to pay *265 amounts due under the note, we conclude also it contains statements of fact supporting La Fiesta's, and thus the Guarantors', liability for late charges and default interest.
The Guarantors raise another issue challenging Fannie Mae's entitlement to interest at the default rate. In the trial court, they raised several objections to Heath's affidavit. Among them was an objection it contained a per diem default interest rate of $205.77 and the figure had not been disclosed during discovery. The trial court later overruled all the Guarantors' objections to Heath's affidavit.
On appeal, the Guarantors argue the court erred by overruling their objection to the per diem interest figure because Rule of Civil Procedure 193.6 required its exclusion. Under rule 193.6, evidence that is requested in a discovery request but not timely disclosed in an initial, amended or supplemental discovery response is excluded unless good cause exists for the failure to disclose or the failure to disclose will not unfairly surprise or unfairly prejudice the other parties. TEX.R. CIV. P . 193.6 ; Babaria v. City of Southlake, No. 02-14-00068-CV, 2016 WL 287523, at *3, 2016 Tex.App. LEXIS 454, at *8-9 (Tex.App.-Fort Worth Jan. 14, 2016, no pet. h.) (mem. op.). We review a trial court's ruling on a rule 193.6 objection for abuse of discretion. Id. 2016 WL 287523, at *4-5 n. 11, 2016 Tex.App. LEXIS 454, at *12 n. 11 ; Roper v. CitiMortgage, Inc., No. 03-11-00887-CV, 2013 WL 6465637, at *10, 2013 Tex.App. LEXIS 14518, at *33 (Tex.App.-Austin November 27, 2013, pet. denied) (mem. op.). We must uphold the ruling on any legal theory on which the court properly could have relied. Id.
Similar to the circumstance in Roper, 2013 WL 6465637, at *10, 2013 Tex.App. LEXIS 14518, at *33, the record before us gives no indication how the trial court addressed the Guarantors' failure-to-disclose objection, or an indication on what grounds the court denied the objection. From our review of the record, however, we find the court well could have determined Fannie Mae's failure to disclose the $205.77 per diem figure neither unfairly surprised nor unfairly prejudiced the Guarantors because very similar per diem figures had previously been provided them. On this record we are unable to say the trial court abused its discretion by overruling the Guarantors' discovery complaint.
Detail for Servicer Advance and Other Fees
We next consider the Guarantors' contention Fannie Mae failed to offer any evidence supporting its entitlement to the amounts Heath included in his calculation for "servicer advance and other fees paid by Fannie Mae."[4] In part, the Guarantors' argument in support of their contention returns to their earlier theme that Fannie Mae has not explained "what acts, omissions, or events constituted the alleged default." Our conclusion Heath's affidavit provides facts describing the event of default is applicable here to require that we again reject such an argument.
The Guarantors' argue further, however, that the affidavit was conclusory because it did not explain how the costs arose and how the Guarantors became responsible for them. In answer to the Guarantors' challenge to its summary judgment evidence, Fannie Mae cites Rockwall Commons, holding that an affidavit made on the personal knowledge of a *266 bank officer, identifying the notes and guaranty and reciting the principal and interest due, is not conclusory and is sufficient to support summary judgment. 331 S.W.3d at 512 (citing Am. 10-Minute Oil Change, Inc. v. Metro. Nat'l Bank-Farmers Branch, 783 S.W.2d 598, 601 (Tex.App.-Dallas 1989, no writ) (stating same)). See also Roper, 2013 WL 6465637, at *13, 2013 Tex.App. LEXIS 14518, at *41-42 (affidavit testimony, based on personal knowledge of records custodian, that identified note and deed of trust and recited payoff due as of certain date was not conclusory and sufficed to support summary judgment). The Guarantors respond by noting they have not challenged Fannie Mae's evidence of the principal amount due[5] but the proof of fees and other amounts Fannie Mae included.
The Guarantors cite Lefton v. Griffith, 136 S.W.3d 271 (Tex.App.-San Antonio 2004, no pet.). We find the case inapposite because it lies outside the realm of suits on promissory notes and guaranties; it concerns a restricted appeal of damages awarded in a default judgment granted on Griffith's Deceptive Trade Practices Act claim. Id. at 274. Griffith's suit alleged the actions of the lessors of her furniture store were a producing cause of economic damages including losses on the sale of her inventory and her personal residence. Id. at 276. On appeal, the court agreed with the lessors that Griffith's affidavit testimony supporting the amount of her damages failed to provide a factual basis for her conclusions and thus was no evidence.[6] While undoubtedly correct in its context, the court's holding Griffith's testimony was conclusory provides little guidance for us in this case.[7]
Fannie Mae has cited us to Keenan v. Gibraltar Sav. Ass'n, 754 S.W.2d 392 (Tex.App.-Houston [14th Dist.] 1988, no writ), in which the court found sufficient to support summary judgment an affidavit in which the savings association's officer stated in lump sums amounts due for "late charges" and amounts advanced for payment of taxes. Id. at 394. We note also the opinion in Obasi v. Univ. of Okla. Health Sci. Ctr., No.04-04-00016-CV, 2004 WL 2418009, 2004 Tex.App. LEXIS 9435 (Tex.App.-San Antonio October 27, 2004, pet. denied), in which the court affirmed a summary judgment based on an "account summary," sworn to by the university's bursar. As described in the opinion, the document listed principal and interest due but, without elaboration, also listed amounts due for "collection costs" and "late charges." Id. 2004 WL 2418009, at *2, 2004 Tex.App. LEXIS 9435 at *6. We conclude the advances and fees reflected in *267 Heath's calculation of the deficiency are not different in kind from the charges and amounts stated in the affidavits in Keenan and Obasi . The inclusion of such amounts in Heath's affidavit, made on his personal knowledge, did not render his affidavit conclusory.
Proof of Prepayment Premium
We turn to the Guarantors' argument that Heath's affidavit was insufficient to prove their liability for the prepayment premium. Under the terms of the note, La Fiesta could voluntarily prepay all the unpaid principal balance but would owe a prepayment premium. The note provides also that the lender's exercise of the right of acceleration after default is treated as a prepayment so the prepayment premium is owed in addition to other amounts due. A schedule to the note sets out the formula for computation of the premium. One of the elements of the formula compares the interest rate under the note to the yield rate on a particular U.S. Treasury security, as published in the WALL STREET JOURNAL on the twenty-fifth business day before the date of acceleration.[8] Heath's affidavit refers to the twenty-fifth day as the "lookback day."
The Guarantors' specific complaint on this point is that Heath's affidavit does not show "when or how" the note was accelerated.
At a point in their briefing, the Guarantors emphasize we must be guided primarily by opinions of the San Antonio court of appeals in this case, transferred from that court. On more than one occasion, the San Antonio court has relied on Timothy Patton, SUMMARY JUDGMENTS IN TEXAS, PRACTICE, PROCEDURE AND REVIEW when dealing with summary judgment evidence in a promissory note case. According to this commentator, courts "have generally not required the movant to file detailed proof reflecting the calculations underlying the balance due on a note," Patton, § 9.06[4][e] (3d ed.2015),[9] but later states that in some instances "greater detail might be required in the supporting affidavit to justify summary judgment." Id. In support, Patton cites cases in which courts have reversed a summary judgment based on an affidavit showing a lump sum due on multiple promissory notes.[10]
Here, with regard to the computation of the prepayment premium, the summary judgment proof provided a level of detail. Heath's affidavit explained that March 13, 2013 was the lookback day, and stated the WALL STREET JOURNAL reported the yield rate on the particular U.S. Treasury security as of that day to be 1.0990%. Heath appended to his affidavit an exhibit on which the premium formula was reprinted, with his computation. The 1.0990% figure is the yield rate value appearing in the computation. We cannot agree the detail Heath provided of his computation of the premium was impermissibly weakened by his failure to state the date of acceleration *268 from which he measured the lookback day, or his failure to further describe the manner by which the note was accelerated. The Guarantors cite us no authority, and we have found none, requiring any greater detail than that Heath's affidavit provided of his computation of the prepayment premium due under La Fiesta's note. We overrule the Guarantors' second issue.
Issue Three-Guarantors' Affirmative Defense of Offset
By amended answer, the Guarantors alleged any deficiency claimed by Fannie Mae should be reduced by the difference between the fair market value of the apartment property on the date of the foreclosure sale and the amount of Fannie Mae's bid. To their summary judgment response, the Guarantors attached the declaration[11] of Pardo stating his opinion that "the Property was worth no less than three-million dollars ... on June 4, 2013" and a certified copy of a tax appraisal district document showing the same valuation. The response cited section 51.003 of the Texas Property Code.[12]
Before the trial court ruled on its motion for summary judgment, Fannie Mae raised an objection to the Pardo declaration and the appraisal district record "on the ground that allowing them into evidence would constitute a violation of the parties' Deed of Trust." The trial court agreed, ruled the Pardo declaration and appraisal district record were inadmissible and struck them from the summary judgment record.
As the result of the trial court's action, the Guarantors had no evidence of fair market value. By their third issue, the Guarantors assert the trial court erred by striking their summary judgment evidence presented in support of their Property Code section 51.003 offset affirmative defense.[13]
Evidentiary rulings are "committed to the trial court's sound discretion." Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.1998) (quoting City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.1995) ); see In re J.P.B., 180 S.W.3d 570, 575 (Tex.2005) (admission or exclusion of evidence within trial court's sound discretion). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985).
Fannie Mae's objection to the Guarantors' evidence was based on language in section 43 of the deed of trust. That section, entitled "Acceleration; Remedies," includes language regarding foreclosure of the deed of trust lien, and addresses actions for a deficiency. It also addresses determinations of fair market value. The deed of trust language begins:
In any action for a deficiency after a foreclosure under this Instrument, if a person against whom recovery is sought requests the court in which the action is pending to determine the fair market value of the Mortgaged Property, as of the date of the foreclosure sale, the following shall be the basis of the court's determination of the fair market value :
(italics ours)
*269 One of the paragraphs following that language[14] is paragraph (f), which reads:
(f) expert opinion testimony shall be considered only from a licensed appraiser certified by the State of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five years' experience in appraising property similar to the Mortgaged Property in the county where the Mortgaged Property is located, and who has conducted and prepared a complete written appraisal of the Mortgaged Property taking into considerations the factors set forth in this Instrument; no expert opinion testimony shall be considered without such written appraisal.
Fannie Mae argued the Pardo declaration and the appraisal district record failed to comply with section 43(f)[15] and were therefore inadmissible as evidence of fair market value to support an offset.
On appeal, the Guarantors argue they are not bound by section 43(f) because they were not parties to the deed of trust and thus not bound by its terms, and the guaranty agreement they signed did not contain such restrictions on expert testimony.
The Guarantors are correct that the guaranty does not contain language like that in section 43 addressing deficiency actions. We therefore turn to the question whether the Guarantors are bound by conditions of the deed of trust which they did not sign. Fannie Mae argues the Guarantors are bound because the loan documents-the note, deed of trust, and guaranty-all are part of a single transaction.
The note, guaranty, and deed of trust were each made on August 20, 2009. The guaranty recites the Guarantors had an economic interest in La Fiesta, the guaranty was a required condition for Arbor's loan to La Fiesta, and the guaranty was given in consideration for the loan. According to the guaranty's merger clause, the "guaranty and the other loan documents represent the final agreement between the parties...." Similarly, a clause in the deed of trust states that, "the note and other loan documents represent the final agreement between the parties...." The definition of "loan documents" includes "all guaranties."
In In re Prudential Ins. Co. of Am., 148 S.W.3d 124 (Tex.2004) (orig. proceeding), the court considered whether a waiver of trial-by-jury clause contained in a commercial lease but not found in a contemporaneously executed guaranty was enforceable against the guarantors. In the guaranty, the individual guarantors promised to "faithfully perform and fulfill all of [the] terms, covenants, conditions, provisions, and agreements" of the lease should the partnership lessee default. In concluding the guaranty incorporated the lease's jury-waiver clause, the court explained "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed ... plainly refers to another writing." And "agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together." Id. at 135 (internal quotation marks and footnotes omitted). The Guarantors concede, as they must, that the guaranty, the note and the deed of trust *270 are to be construed together.[16]
Under this guaranty's language, the primary item guaranteed was "[t]he entire Indebtedness." The term "Indebtedness" was not defined in the guaranty but in the deed of trust, which defined the Indebtedness to mean "the principal of, interest on, and all other amounts due at any time under " the note, the deed of trust or any other loan document. (italics ours) The amounts due at any time under the note and deed of trust would include a deficiency remaining after foreclosure.[17]
But the Guarantors argue that calculation of the Indebtedness does not include the offset against a deficiency provided under section 51.003. Determining the Indebtedness and applying the statutory offset, the Guarantors argue, "have nothing to do with one another." Accordingly, they reason, their guarantee of the Indebtedness bears no relation to the terms of the deed of trust affecting the manner in which fair market value, and the resulting offset, are to be determined.
We cannot accept the Guarantors' contention. By their reasoning, the offset to which the Guarantors would be entitled against a deficiency is to be determined under section 51.003, unaffected by the provisions of section 43 of the deed of trust, while the offset applicable to a party expressly subject to the deed of trust, like La Fiesta, is determined under section 51.003 as affected by section 43's provisions. By the Guarantors' reading of the documents, the amount of the deficiency due, after the offset, from La Fiesta thus would be determined under different rules and accordingly might differ in amount, from the amount of the deficiency guaranteed under the guaranty. We fail to see how this result accomplishes the guarantee of "the entire Indebtedness" required by the guaranty. The "entire Indebtedness" should not mean one thing for amounts owed by La Fiesta and another for amounts owed by the Guarantors. Construing the documents together, and applying the express terms of the guaranty, we find the provisions of section 43 of the deed of trust applicable to the Guarantors.
The Guarantors contend for a second reason that the trial court erred by striking Pardo's declaration. They argue his opinion of the fair market value of the apartment property was not an expert opinion but was relevant and admissible as that of an owner of the property. See Natural Gas Pipeline Co. of Am. v. Justiss, 397 S.W.3d 150, 156 (Tex.2012) (explaining under the property-owner rule a property owner may testify to his property's value, but the testimony must meet the "same requirements as any other opinion evidence"). Because section 43(f) of the deed of trust speaks only to expert opinion testimony, the Guarantors assert, Pardo's opinion was not barred even if section 43 was applicable to their proof of fair market value.
We reiterate that we review the trial court's ruling for an abuse of discretion, considering whether the court acted without regard for any guiding rules or principles. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. Owens-Corning, 972 S.W.2d at 43. With regard to evidence of fair market value offered under section 51.003, the guiding rules or principles must include the categories of evidence listed by *271 the Legislature in section 51.003(b). See PlainsCapital Bank, 459 S.W.3d at 556 (analyzing factors enumerated in § 51.003(b) ); City of Brownsville, 897 S.W.2d at 754 (noting guiding rules and principles governing the exclusion of evidence in that case "must be culled from" the provisions of statute applicable to claim). Because section 43(f) of the deed of trust is applicable to the Guarantors, it also properly served to guide the trial court. Property-owner valuation testimony is the "functional equivalent of expert testimony." Justiss, 397 S.W.3d at 159. We see no abuse of discretion in the trial court's decision to exclude Pardo's property-owner valuation opinion. The Guarantors' third issue is overruled.
Conclusion
Having overruled each of the Guarantors' issues on appeal, we affirm the trial court's judgment.

This case was transferred to us from the Fourth Court of Appeals in San Antonio pursuant to an order of the Texas Supreme Court under the authority of Section 73.001 of the Texas Government Code. Tex. Gov't Code Ann. 73.001 (West 2013) ; see Tex.R.App. P. 41.3 (precedent in transferred cases).

As the court in Skeen described it, "examination of the note, the guaranty agreement and the deed of trust reveals that there were numerous acts or omissions set out in the instruments which would give rise to a legal duty or duties which, if not performed, would constitute a 'default.' Several of these may be referred to as a 'default ... in payment.' " 526 S.W.2d at 254. The court set out in a footnote some sixteen possible events of default. Id.

The document we refer to as the deed of trust is Fannie Mae's Multifamily Deed of Trust, Assignment of Rents and Security Agreement and Fixture Filing (Texas), Form 4044, bearing the date 11/01. Heath's affidavit identified the deed of trust, the note and the guaranty, and copies of each were appended.

The deed of trust defines the term "loan servicer" as the entity designated to collect payments and deposits, receive notices under the loan documents and otherwise "service the loan."

Nor do the Guarantors challenge on appeal Heath's statements regarding the "insurance claim" or the "credit for funds swept to Fannie Mae."

The court noted Griffith's affidavit, which asserted she was forced to sell for $10,000 her inventory she valued at $300,000, described neither the amount nor the type of furniture in the inventory. 136 S.W.3d at 277.

The Guarantors also cite Fairbank v. First Am. Bank, S.S.B., No. 05--6-00005-CV, 2007 WL 2247371, 2007 Tex.App. LEXIS 6228 (Tex.App.-Dallas Aug. 7, 2007, no pet.) (mem. op.). It is unclear to us that the holding of Fairbank is contrary to that of Am. 10-Minute Oil Change, 783 S.W.2d at 601. The brief discussion in Fairbank identifies the affiant only by name and does not address his relationship with the noteholder or other basis for personal knowledge of the facts to which he swore in his affidavit. 2007 WL 2247371, at *1-2, 2007 Tex.App. LEXIS 6228, at *3-4. We think the court's statement in Fairbank that the summary judgment evidence did not contain a ledger sheet or other document providing the necessary supporting facts must be seen in that light. See Rockwall Commons, 331 S.W.3d at 512 (contrasting Fairbank and Am. 10-Minute Oil Change ).

Or, in the case of a voluntary prepayment, the twenty-fifth business day before the date stated in the borrower's required written notice of the intention to make a prepayment.

In Obasi, the San Antonio court cited the quoted statement from Patton, rejecting Obasi's appellate contention the trial court should have sustained her objection asserting the bursar's affidavit was conclusory. 2004 WL 2418009, at *1-2, 2004 Tex.App. LEXIS 9435, at *3-4. See also Hudspeth v. Investor Collection Servs., Ltd. Pshp., 985 S.W.2d 477, 479 (Tex.App.-San Antonio 1998, no pet.) ; Stucki v. Noble, 963 S.W.2d 776, 782 (Tex.App.-San Antonio 1998, pet. denied) (both also citing Patton).

Patton, § 9.06[4][e] n.608, (citing General Specialties, Inc. v. Charter Nat'l Bank-Houston, 687 S.W.2d 772, 774 (Tex.App.-Houston [14th Dist.] 1985, no writ) and FFP Mktg. Co. v. Long Lane Master Tr. IV, 169 S.W.3d 402, 411-13 (Tex.App.-Fort Worth 2005, no pet.) ).

See Tex. Civ. Prac. & Rem. Code Ann. § 132.001 (West Supp.2015).

Tex. Prop.Code Ann. § 51.003 (West 2014).

See PlainsCapital Bank v. Martin, 459 S.W.3d 550, 557 (Tex.2015) (offset under § 51.003 operates as an affirmative defense to deficiency claim) (citing Moayedi v. Interstate 35/Chisam Rd., L.P., 438 S.W.3d 1, 6 (Tex.2014) ).

The paragraphs appear as (a) through (h), each addressing some aspect of valuation of collateral at the time of foreclosure.

It is undisputed that Pardo is not a "licensed appraiser certified by the State of Texas," and that he had not prepared a "complete written appraisal."

See U.S. Bank Nat' l Ass'n, as Trustee, et al. v. Am. Realty Trust, Inc., 275 S.W.3d 647, 650-51 (Tex.App.-Dallas 2009, pet. denied) (citing Prudential and construing guaranty, mortgage and security agreement together).

Under paragraph 3 of the guaranty, the Guarantors' obligations survived the foreclosure sale.