

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00261-CV

———————————————————

SAMMY JO KRESSENBERG, Appellant

V.

NATIONSTAR HECM ACQUISITION TRUST 2015-2, WILMINGTON SAVINGS FUND SOCIETY, FSB NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-287991-16

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

This is an appeal from the trial court's grant of summary judgment in favor of Appellee Nationstar HECM Acquisition Trust 2015-2, Wilmington Savings Fund Society, FSB in its capacity as Trustee. Appellant Sammy Jo Kressenberg's four issues focus solely on the trial court's failure to sustain objections to Appellee's summary-judgment evidence. We hold that the trial court acted within its discretion by overruling Appellant's objections and that the failure to sustain the objections did not probably cause the rendition of an improper judgment. We therefore affirm the judgment of the trial court.

## II. Factual and Procedural Background

Appellee sought a nonjudicial foreclosure of a reverse mortgage through declaratory judgment. The suit alleged two instances of default: Appellant's failure to pay taxes due on the property and her failure to insure it.

Appellee filed a motion for summary judgment, which the trial court denied. Appellee filed a second motion for summary judgment, which the trial court granted. The trial court also signed an order overruling various objections Appellant had made to Appellee's summary-judgment evidence. Appellant filed a motion for new trial that, in essence, reurged her prior objections to Appellee's summary-judgment evidence. The trial court overruled the motion for new trial and also specifically

2

overruled the evidentiary objections that Appellant had reurged. Appellant then perfected this appeal.

## III.  Standard of Review

"We review the trial court's decision to admit or exclude summary[-]judgment evidence for an abuse of discretion." *Pettit v. Maxwell*, 509 S.W.3d 542, 548 (Tex. App.—El Paso 2016, no pet.). To reverse a matter, we must find the error to be harmful. *See* Tex. R. App. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . .").

## IV.  Analysis of Rulings on Objections to Summary-Judgment Evidence

Appellant's first three issues deal with various objections to the summary-judgment evidence relied on by Appellee. The objections were as follows: (1) Appellee failed to lay a proper predicate under the business-records hearsay exception for certain third-party documents, (2) Appellee failed to establish that proper notice of default had been given, and (3) Appellee supported its motion with unreliable and unauthenticated documents.

## A.  Proof of Default

In her first issue, Appellant makes the often-encountered objection that the affiant failed to lay a business-records predicate for the admission of a third-party's documents. As explained below, what Appellant does not challenge is that the affiant

laid a predicate for Appellee's own documents and ignores that those documents establish that Appellant had defaulted on the note by failing to pay insurance premiums and taxes due on the property. Thus, even if there were a flaw in the predicate for the prove-up of the third-party's documents, the evidence derived from Appellee's own records was sufficient to sustain Appellee's summary-judgment burden.

As the parties agree, a reverse mortgage is a nonrecourse obligation.[1] *See* Tex. Const. art. XVI, § 50(k)(1), (3), (4), (6). "[A] nonrecourse note has the effect of

---

[1]The mechanics of a reverse mortgage are described as follows:

A reverse mortgage allows homeowners, age 62 or older, to convert home equity into periodic payments or advances made by the lender over the life of the homeowners. *See* J. Alton Alsup, *The New and Improved Texas Reverse Mortgage*, 55 Consumer Fin. L.Q. Rep. 207, 209 (2001); *see also Larsen v. OneWest Bank, FSB*, No. 14-14-00485-CV, 2015 WL 6768722, at *4 (Tex. App.—Houston [14th Dist.] Nov. 5, 2015, no pet.) (mem. op.) (citing Alsup when explaining features of a reverse mortgage). An initial advance typically is made at loan closing to cover closing costs and payoff any existing lien, and the balance of the credit is then advanced in periodic payments according to the plan. *See* Alsup, supra, at 209. Interest accrues only on the amounts advanced over the term of the loan. *See id.* The homeowners have no obligation to repay any principal or interest during their lifetimes unless they sell or transfer the home, permanently cease occupying the home as their principal residence, or fail to properly maintain the property, timely pay property taxes and insurance premiums, or maintain the priority of the reverse mortgage lien. *See id.* A reverse mortgage is a non-recourse debt, meaning the lender may look only to the proceeds of the sale of the home for repayment when the debt becomes due, typically upon the death of the last of the homeowners to die or upon one of the other maturing events that permit the lender to accelerate the debt. *See id.* at 209–10. Neither a deceased homeowner's estate nor his heirs are liable

4

making the note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note, rather than having the maker of the note personally guarantee repayment." *Melton v. CU Members Mortg.*, 586 S.W.3d 26, 33 (Tex. App.—Austin 2019, pet. denied). The events of default for a reverse mortgage include "defaults on an obligation specified in the loan documents to repair and maintain, pay taxes and assessments on, or insure the homestead property." Tex. Const. art. XVI, § 50(k)(6)(D)(i). The loan documents signed by Appellant create the obligation to pay taxes and insure the property. Thus, to establish its right to summary judgment, Appellee did not have a burden to establish that a particular amount was owed but that Appellant had failed to pay taxes on the property and to insure it.

Attached to Appellee's summary-judgment motion are exhibits generated by a number of entities with no explanation of how the entities interrelate. But there are also a number of exhibits that Appellee generated, such as demand letters and notices that inform Appellant of defaults for the nonpayment of taxes and insurance premiums. Appellant's summary-judgment response does not allege that she has paid

for any deficiency that may result after the sale. *See id.* at 210. Since 1998, the Texas Constitution has expressly authorized a reverse mortgage as a type of debt that may be secured by a valid lien against homestead property. *See* Tex. Const. art. XVI, § 50(a)(7); *see also Larsen*, 2015 WL 6768722, at *5.

*Washington-Jarmon v. OneWest Bank, FSB*, 513 S.W.3d 103, 105 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

the taxes or insurance premiums that Appellee's letters contend that it had paid on her behalf. Nor does Appellant's response object to a lack of predicate for Appellee's letters. The supporting affidavit filed by Appellee relies on both the documents that Appellant challenges and on the documents that Appellant does not challenge to support its motion. Thus, the record contains unchallenged evidence that Appellant defaulted on her obligations under the loan documents.

Our question is whether the unchallenged evidence met Appellee's summary-judgment burden to establish that Appellant had defaulted by not paying taxes and insurance. It does. Even when a party must establish that there was a default on an obligation to pay under the terms of an instrument and that a specific amount is due, a minimal amount of evidence will meet a party's summary-judgment burden. *See, e.g.,* *Rogers v. Asset Lending, L.L.C.*, No. 14-16-00980-CV, 2018 WL 3118645, at \*6–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, no pet.) (mem. op.) (holding that affidavit merely stating amount due sufficed to meet summary-judgment burden); *H&H Steel Fabricators, Inc. v. Wells Fargo Equip. Fin., Inc.*, No. 02-15-00391-CV, 2016 WL 6277371, at \*4 (Tex. App.—Fort Worth Oct. 27, 2016, no pet.) (mem. op.) ("To establish the amount owed, [movant's] affidavit needed to state only the total amount due on the note based on his personal knowledge as a bank officer; detailed proof of the balance of the note was not required."); *Duarte-Viera v. Fannie Mae*, 560 S.W.3d 258, 264–66 (Tex. App.—Amarillo 2016, no pet.) (holding that when note made a failure to pay an

6

event of default, summary-judgment affidavit stating that there was a failure to pay amounts due and owing established default for summary-judgment purposes).

Undoubtedly, Appellee's summary-judgment proof could have been more precise. But the question is whether the affidavit it filed and the attachments to that affidavit—excluding the evidence that Appellant objected to—presented enough evidence to establish that Appellant had an obligation to pay taxes and insurance on the mortgaged property and that she had defaulted on that obligation. Appellee's business records—in the form of the various letters—contain unchallenged evidence that Appellant had not paid taxes due on the property or insurance premiums. Appellant does not challenge the fact that she bore the obligation to make the payments or that it was an event of default not to pay them. Thus, any error in the failure to authenticate the third-party documents was harmless. *See* Tex. R. App. P. 44.1(a)(1).

We overrule Appellant's first issue.

## B. Notice of Default

Appellant argues that the summary-judgment evidence establishes two deficiencies in how she was given notice of default: (1) Appellee sent a notice of default and opportunity to cure by certified mail when the deed of trust at issue specified notice was to be sent by first-class mail, and (2) Appellant did not actually receive the notice because "[t]he USPS Tracking Information would appear to indicate that [Appellant] was left a notice and did not pick up the letter." However, as

7

explained below, neither the proviso of the deed of trust nor the Texas Property Code require actual receipt of a notice of default. Also, the deed of trust provision specifying service by first-class mail defers to applicable law, and the Property Code mandates the use of certified mail as the means of transmitting notice.

Appellant relies on the following provision of the deed of trust to support her arguments claiming deficiencies in the transmission and receipt of notice:

> 17. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or *by mailing it* by first[-]class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first[-]class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. *Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 17.* [Emphasis added.]

The first flaw in Appellant's argument is that the quoted paragraph does not mandate that she actually receive notice. Based on the italicized portions of the paragraph above, properly mailing the notice satisfies the obligation to provide notice.

And Appellee responds to Appellant's argument that she had to actually receive the notice by noting that the provision of the Texas Property Code dealing with notice is to the contrary because the Property Code requires only proper transmission of the notice and not its actual receipt. The Property Code bears out Appellee's contention:

> (e) *Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.* The affidavit of a person knowledgeable of

8

the facts to the effect that service was completed is prima facie evidence of service.

Tex. Prop. Code Ann. § 51.002(e) (emphasis added); *see Ebrahimi v. Caliber Home Loans, Inc.*, No. 05-18-00456-CV, 2019 WL 1615356, at *7 (Tex. App.—Dallas Apr. 15, 2019, pet. denied) (mem. op.) (stating that Section 51.002(e) "makes it clear that service is completed upon deposit in the mail, not actual receipt; there is no requirement that a plaintiff physically receive the notice in order for service to be valid and effective"); *King v. Bank of N.Y.*, No. 13-07-00069-CV, 2008 WL 2764523, at *2 (Tex. App.—Corpus Christi–Edinburg July 17, 2008, no pet.) (mem. op.) ("Whether the debtor actually receives the notice is irrelevant for statutory purposes. To show a violation, the debtor must show that the mortgage holder did not mail the required notice by certified mail to the debtor's last known address.").

With respect to Appellant's challenge to the use of certified rather than first-class mail, the deed of trust provision that she relies on states that first-class mail is to be used "unless applicable law requires use of another method." Here, applicable law provides for another method because the Property Code mandates service by certified mail. Specifically, the Property Code provides that "the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail." Tex. Prop. Code Ann. § 51.002(d). Thus, Appellee followed the applicable law dictating the method of service.

9

We overrule Appellant's second issue.

## C. Signature on the Note and Approval to Foreclose

Appellant contends in her third issue that the trial court erred by not sustaining her objection that Appellee had failed to authenticate the note at issue by proving that she had executed it. The objection was invalid because Appellant did not file a verified denial of execution under Texas Rule of Civil Procedure 93(7), and the failure to file that denial freed Appellee from having to prove execution of the note. *See* Tex. R. Civ. P. 93(7) (listing matters in pleadings that must be verified by affidavit, including "[d]enial of the execution by [plaintiff] or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed"); *Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 494 (Tex. App.—Tyler 2016, no pet.) ("Absent a verified denial [filed pursuant to Rule 93(7)], the document is received into evidence as fully proved.").

Next, Appellant challenges whether Appellee showed the pieces fit together on the issue of whether it had obtained approval from the Secretary of the Department of Housing and Urban Development to foreclose. Though no one explains to us why HUD approval might be necessary, the deed of trust has a provision stating that "Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary [of Housing and Urban Development]." Appellant's argument holds no sway; as discussed below, she had no right to complain

10

even if HUD had not given permission to foreclose. Also, her objections are invalid because the evidence was not, as she claims, speculative or conclusory.

The affidavit filed by Appellee in support of its motion for summary judgment contains the following recitations about the approval process:

> On March 28, 2016, Nationstar requested the loan-servicing contractor for The Department of Housing and Urban Development to call the loan due and payable as corporate funds were advanced on behalf of Borrower to pay for delinquent taxes and insurance. (*See* Due and Payable request with supporting documentation[,] a copy of which is attached to this Affidavit as Exhibit "A-5"[.)]

> On April 6, 2016, Nationstar received approval from Novad Management Consulting, the loan-servicing contractor for The Department of Housing and Urban Development[,] to call the loan due and payable as corporate funds were advanced on behalf of Borrower to pay for delinquent taxes and insurance. (*See* HUD Approval Letter[,] a copy of which is attached to this Affidavit as Exhibit "A-6"[.)]

As we construe Appellant's argument, the quoted paragraphs and the documents they reference are allegedly flawed because they are conclusory and speculative. The basis for these objections is that the evidence fails to show that the approval request was directed to an entity with the authority to act on behalf of HUD. Specifically, the evidence did not establish that Novad Management Consulting acted as servicer for HUD or "had the authority to call the loan." Appellant also sees a flaw in the approval given by Novad because it was not directed to Appellee but to an entity named Celink.

But no one ever explains to us why the question of whether Appellee had received approval from HUD for foreclosure is not much ado about nothing. We

11

have previously held that a mortgagor "has no private right of action regarding any alleged failure by [mortgagee] to follow HUD regulations, even those incorporated in the deed of trust." *Hornbuckle v. Countrywide Home Loans, Inc.*, No. 02-09-00330-CV, 2011 WL 1901975, at \*5 (Tex. App.—Fort Worth May 19, 2011, no pet.) (mem. op.) (per curiam). In *Hornbuckle*, we held that the mortgagor could not complain about the failure of the mortgagee to obtain approval from HUD before foreclosing. *Id.* Thus, whether Appellee obtained authorization from HUD gave Appellant no grounds to object to the foreclosure. *Id.* Consequently, even if the trial court erred by overruling an objection to the evidence, that error is harmless because Appellant did not demonstrate that the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 125 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("Even if the trial court errs by considering conclusory evidence at summary judgment, however, we will not reverse unless the party requesting reversal can demonstrate that the error probably caused the rendition of an improper judgment.").

But even if the failure to obtain authorization was a matter that impacted Appellant, we do not conclude that the trial court abused its discretion by failing to sustain Appellant's objections on the grounds that the statements—that Novad was HUD's servicer and had authority to act on its behalf—were conclusory and speculative. "A conclusory statement is one that 'does not provide the underlying facts to support the conclusion.'" *Hobson v. Francis*, No. 02-18-00180-CV, 2019 WL

12

2635562, at *6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.). The letter requesting authorization to foreclose was a document drafted by Appellee. The letter was directed to a particular entity seeking approval from HUD for the foreclosure, and that entity gave the requested authorization. And Novad responded in a way that indicated that it was acting as the loan servicer. These documents give a factual basis for the statement that Novad was acting on behalf of and had the authority to act on behalf of HUD.

If Appellant's objection based on speculation is that the affiant lacked personal knowledge of the role of Novad, that objection is also invalid. Appellant does not attack the affiant's claim that he had personal knowledge of the statements made in his affidavit. Even if that objection had been made, it would have been invalid. The affiant demonstrated personal knowledge based on his recitation of his job title and his statement that he had reviewed the records attached to the affidavit and that he was the custodian of such records. *Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 330 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[Affiant], however, permissibly explained that her knowledge came via her position as vice president and assistant corporate secretary with BOA."); *Hinojosa v. Citibank (S.D.), N.A.*, No. 05-07-00059-CV, 2008 WL 570601, at *1–2 (Tex. App.—Dallas Mar. 4, 2008, pet. denied) (mem. op.) (holding that affiant's statement explaining the content of three attached documents was not conclusory and that records custodian's personal knowledge of records was sufficient to provide factual support for her statement).

13

Next, Appellant challenges the admissibility of the letter Novad sent authorizing foreclosure by rehashing the same arguments that the evidence regarding Novad's role as HUD's servicer was speculative and conclusory. Our prior two paragraphs resolve why these objections were invalid. Appellant embellishes the objections by asserting that the letter from Novad contains a flaw that contradicts the affiant's statement that Novad gave Appellee approval to foreclose. That alleged flaw is that the letter from Novad is addressed to Celink. We do not see the fatal contradiction that Appellant does. Novad's letter is dated nine days after Appellee requested authorization to foreclose, it specifically mentions Appellant's name as the borrower, and the letter from Appellee requesting permission to foreclose contains a Celink loan number. In the face of these facts, it is perhaps a flaw in the exchange of communications about approval, but it does not rise to the level of a "contradiction" of Appellee's claim that HUD gave approval to foreclose.

We overrule Appellant's third issue.

## D. Request to Reverse Judgment

In her fourth issue, Appellant requests that we reverse the judgment if we sustain any of her previous three issues. Because her fourth issue is contingent on our sustaining one of her first three issues and because we have not done so, we overrule Appellant's fourth issue.

14

## V. Conclusion

Having overruled Appellant's four issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  April 9, 2020